[No. S049039. Dec. 12, 1996.]

VONS COMPANIES, INC., Cross-complainant and Appellant, v. SEABEST FOODS, INC., et al., Cross-defendants and Respondents.

**COUNSEL**

Munger, Tolles & Olson, Gregory P. Stone, Joseph D. Lee, Kristin A. Linsley, David M. Rosenzweig, Susan R. Szabo and Kristin S. Escalante for Cross-complainant and Appellant.

Neil, Dymott, Perkins, Brown & Frank, Thomas M. Dymott, Kyle A. Cruse, Crosby, Heafey, Roach & May, Peter W. Davis, James C. Martin, Jacques B. LeBoeuf, Laskero & Associates and Michael G. Roddy for Cross-defendants and Respondents.

**OPINION**

**GEORGE, C. J.**—We consider in this case the issue whether California courts may exercise personal jurisdiction over owners of "fast food" restaurant franchises located in another state, in litigation stemming from several incidents of food poisoning that occurred in the foreign jurisdiction. We conclude that the franchisees had sufficient contacts with California through their relationship with their California franchiser, and that the tort claims alleged against the franchisees in a cross-complaint filed in a California action stemming from the food poisoning incidents were sufficiently related to the franchisees' contacts in California, to justify this state's exercise of jurisdiction over the franchisees.

I

In 1993, customers of Jack-in-the-Box restaurants in several states, including Washington, suffered from exposure to Escherichia coli (E. coli) bacteria traced to hamburgers sold at the restaurants. Many fell ill and some died.

Foodmaker, Inc., of which Jack-in-the-Box is a division, is a Delaware corporation with its principal place of business in San Diego, California. It blamed the E. coli contamination on its meat suppliers, including the Vons Companies, Inc. (Vons). Vons processed hamburger patties in its El Monte, California plant and shipped them to Foodmaker for use in Jack-in-the-Box restaurants.

Litigation soon followed. Eighty-five Jack-in-the-Box franchisees from California and other states, whose customers had *not* been injured, sued Foodmaker, Vons, and other meat processors, in an action brought in the San Diego County Superior Court. The action stated causes of action for negligence, breach of implied warranty, breach of contract, and other claims, and sought substantial damages for loss of business caused by the adverse publicity that followed the E. coli outbreak.

Foodmaker cross-complained against Vons and the other meat suppliers. Foodmaker's cross-complaint alleged breach of warranty and of contract, as well as negligence, negligent interference with economic relations, and other claims. It alleged the suppliers delivered contaminated meat to Foodmaker, and that this conduct exposed Foodmaker to liability both to injured customers and to franchisees who had lost business after the E. coli outbreak.

Vons then filed the cross-complaint that is the subject of this appeal.[1] It asserted causes of action against Foodmaker, several slaughterers and meat packers, and several Jack-in-the-Box franchisees, including Seabest Foods, Inc. (Seabest) and Washington Restaurant Management, Inc. (WRMI). Seabest, beginning in 1988, and WRMI, beginning in 1987, were owners of Jack-in-the-Box franchises in Washington State at which E. coli contamination had injured or killed Jack-in-the-Box customers.[2]

Vons's cross-complaint alleged the injuries caused by the E. coli contamination would have been avoided had Foodmaker and its franchisees cooked the hamburgers at the proper temperature. Specifically, it alleged Foodmaker, Seabest, and WRMI had failed to follow proper procedures for cooking the meat, and that their procedures were "systematically deficient when measured against industry standards." In addition, it alleged Foodmaker, Seabest, and WRMI had failed to follow government standards for cooking the meat at a proper temperature, that Foodmaker had failed to inform its franchisees of the applicable government regulations, that the "standard" grills used by Foodmaker, Seabest, and WRMI were below the industry norm and lacked various safety features, and that Foodmaker, Seabest, and WRMI failed to require adequate qualifications and training for their cooks. .

---

[1]For convenience, references to "the cross-complaint" refer to Vons's cross-complaint.

[2]Seabest and WRMI are Washington corporations to which individual franchisees of Foodmaker assigned their franchise agreements. All restaurant locations involved in the franchise agreements were located in Washington State. The individual franchisees served as corporate directors of Seabest and WRMI, and it does not appear there were any shareholders other than the individual franchisees. The assignments provided the individual franchisees would remain obligated to perform on the franchise agreements. Foodmaker does not permit franchises to be sold directly to corporations. For convenience, we refer to Seabest and WRMI as the franchisees.

The cross-complaint asserted causes of action against Seabest and WRMI for negligence, negligent and intentional interference with economic advantage, and comparative and equitable indemnity. Vons sought damages for its own loss of business, as well as indemnification for any liability that might be imposed upon it for injury to Jack-in-the-Box customers in other actions, and for liability that might be imposed upon it for the claims of the franchisees in the current action.

Seabest and WRMI appeared specially and moved to quash service of process on the ground of lack of personal jurisdiction. The trial court considered evidence of Seabest's contacts with California, including the circumstance that a majority of its board of directors lived in California and had signed franchise agreements, leases, and a security agreement with Foodmaker in California. One of Seabest's leases and its security agreement with Foodmaker listed the franchisee's home office address as being in Granada Hills, California. Although most of its business with Foodmaker was conducted with Foodmaker's Washington office, Seabest conducted some business by mail and telephone with Foodmaker at Foodmaker's corporate headquarters in San Diego. Seabest officers attended multiple training sessions offered by Foodmaker in California, and met with Foodmaker representatives in San Diego before entering the franchise agreements, and again thereafter to resolve a dispute unrelated to the present litigation.

Significantly, the franchise agreements for Seabest's 10 Washington restaurants provided that any contract disputes would be litigated in California under California law, and that the franchisees would meet Foodmaker's specifications in providing training, following cooking procedures, and using equipment. The agreement specified that the franchisees must purchase ingredients, materials, and supplies from sources approved by Foodmaker, which might include Foodmaker itself. In fact, Seabest purchased most of its food and all of its hamburger patties from Foodmaker. It received delivery of food from Foodmaker's Washington warehouse, but was sent invoices by (and sent payments to) the San Diego Foodmaker headquarters—at first by mail, and then through a Colorado telephone exchange. Seabest also made its royalty and rent payments to Foodmaker in the same manner. Seabest employed a San Diego accountant to prepare the monthly financial statement it was required to send to Foodmaker headquarters in San Diego. During high volume periods, Seabest remitted up to $450,000 a month to Foodmaker.

Foodmaker inspectors from California occasionally inspected Seabest's restaurants, and Foodmaker once sent an auditor from its San Diego office to

audit Seabest's books. Seabest also made equipment purchases from Food-maker in California. Payment for equipment purchases for one restaurant totaled $233,217.

WRMI had less extensive contacts with Foodmaker in California, con-ducting almost all of its business with Foodmaker through Foodmaker's Washington office. Nonetheless, WRMI's three franchise agreements were negotiated in California, and one of the individual franchisees executed original franchise agreements in California. These franchise agreements provided that contract disputes would be litigated in California under Cali-fornia law, and also controlled the franchisee's purchases of ingredients, training, equipment, and cooking procedures in the same manner as the Seabest agreements. In addition, the president of WRMI met once with Foodmaker representatives in San Diego to negotiate regarding two initial franchises, and attended training on another occasion in San Diego. He also had telephone conversations regarding the potential sale of a franchise with a manager employed at Foodmaker's San Diego office. His application to purchase a third franchise was forwarded to the San Diego office of Food-maker, and that office in turn returned the approved franchise and an assignment of the individual franchises to the WRMI corporation.

The president of WRMI attended yearly meetings in California with Foodmaker dealing with WRMI business, and also traveled to California six to eight times to represent Jack-in-the-Box franchisees other than WRMI in policy discussions with Foodmaker. He received monthly accounts receiv-able statements from the San Diego office. He purchased 70 percent of his food supplies and all of his hamburger patties from Foodmaker. He was sent invoices by Foodmaker's Washington center and received his deliveries from that location, but he received a monthly statement for his food pur-chases from Foodmaker in San Diego. The hamburger patties delivered to him from that center originally came from California suppliers. He originally mailed his royalty, rent, and food payments to Foodmaker's San Diego address, and later paid the bills by telephone to a bank located in California. He also sent monthly income statements and a yearly accounting to Food-maker in San Diego. His employees had occasional phone conversations with Foodmaker in California regarding financial matters, and he occasion-ally received updated training materials from Foodmaker in California. After the E. coli outbreak, he had conversations with Foodmaker in California regarding an agreement to terminate his franchises, as noted below. Finally, two WRMI employees received training in California on one occasion, and WRMI purchased cash registers and other sales tracking equipment directly from Foodmaker in California.

There also was evidence that during litigation involving the motions to quash, Foodmaker reached an agreement with Seabest and WRMI under

which the franchisees assigned the franchises back to Foodmaker. In addition, Foodmaker agreed to defend and indemnify the franchisees to the extent their insurers refused to defend and indemnify them against personal injury claims brought by injured Jack-in-the-Box customers, as well as the claims brought in the present litigation.[3]

The trial court granted the motions to quash, and the Court of Appeal affirmed, also ordering Vons to pay Seabest's and WRMI's costs on appeal. We granted Vons's petition for review.

## II

## A

■ California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. (Code Civ. Proc., § 410.10.) A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate " 'traditional notions of fair play and substantial justice.' " (*International Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed.

---

[3]Vons requests that we take judicial notice, augment the record, or make a factual determination under Code of Civil Procedure section 909, so that the record in these proceedings will include deposition testimony given after the judgment was rendered in this matter, as well as manuals referred to in the franchise agreement but not presented to the trial court, in order to demonstrate that the franchise agreement required Seabest and WRMI to follow certain specifications in cooking its hamburgers. Vons seeks to include this new evidence in order to rebut the factual claims of Seabest and WRMI that the franchise agreements did not dictate how the franchisees were to prepare hamburgers at their restaurants. Seabest and WRMI oppose the motion.

Augmentation does not function to supplement the record with materials not before the trial court. (*People* v. *Brooks* (1980) 26 Cal.3d 471, 484 [162 Cal.Rptr. 177, 605 P.2d 1306]; *Rebney* v. *Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1139, fn. 7 [269 Cal.Rptr. 844]; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs 1 (The Rutter Group 1995) ¶ 5:134, p. 5-32.) Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally "when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 813 [180 Cal.Rptr. 628, 640 P.2d 764].) No exceptional circumstances exist that would justify deviating from that rule, either by taking judicial notice or exercising the power to take evidence under Code of Civil Procedure section 909. (Cf. *Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 813; *In re Conservatorship of Hart* (1991) 228 Cal.App.3d 1244, 1257 [279 Cal.Rptr. 249]; *Monsan Homes, Inc.* v. *Pogrebneak* (1989) 210 Cal.App.3d 826, 830 [258 Cal.Rptr. 676]; *De Young* v. *Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863, fn. 3 [206 Cal.Rptr. 28].) The request is denied.

95, 102, 66 S.Ct. 154, 161 A.L.R. 1057] *(International Shoe)*; see also *Burnham* v. *Superior Court* (1990) 495 U.S. 604, 618-619 [109 L.Ed.2d 631, 644-645, 110 S.Ct. 2105] *(Burnham)*.)

■ Recent decisions of the United States Supreme Court describe two bases for limiting a state's exercise of personal jurisdiction over nonresidents. The first recognizes limits on a state's assertion of jurisdiction designed to ensure fairness to nonresident defendants. The second recognizes the mutual limits on the states' sovereign power to exercise jurisdiction in a federal system.

As the high court has explained, each individual has a liberty interest in not being subject to the judgments of a forum with which he or she has established no meaningful minimum "contacts, ties or relations." *(Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 471-472 [85 L.Ed.2d 528, 540, 105 S.Ct. 2174] *(Burger King)* [approving Florida court's exercise of jurisdiction over franchise dispute involving Michigan franchisee and Florida franchiser], quoting *International Shoe, supra,* 326 U.S. at p. 319 [90 L.Ed. at p. 104].) As a matter of fairness, a defendant should not be "haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts." *(Burger King, supra,* 471 U.S. at p. 475 [85 L.Ed.2d at p. 542].)

The concept of minimum contacts also requires states to observe certain territorial limits on their sovereignty. It "ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *(World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 292 [62 L.Ed.2d 490, 498, 100 S.Ct. 559] *(World-Wide Volkswagen)*.) As the high court has explained, "the Framers . . . intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States . . . ." *(Id.* at p. 293 [62 L.Ed.2d at p. 499].)

■ Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are "substantial . . . continuous and systematic." *(Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437, 445, 446 [96 L.Ed. 485, 492, 493, 72 S.Ct. 413]; see also *Helicopteros Nacionales de Columbia* v. *Hall* (1984) 466 U.S. 408, 414-415 [80 L.Ed.2d 404, 410-411, 104 S.Ct. 1868] *(Helicopteros)*.) In such a case, "it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum." *(Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127

Cal.Rptr. 352, 545 P.2d 264] (*Cornelison*); see also *Helicopteros, supra*, 466 U.S. at p. 414 [80 L.Ed.2d at pp. 410-411].) Such a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction. (See *Burnham, supra*, 495 U.S. at p. 618 [109 L.Ed.2d at p. 644] (plur. opn. by Scalia, J.).) No question of general jurisdiction arises, however, in the case before us.

If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum, if the defendant has purposefully availed himself or herself of forum benefits (*Burger King, supra*, 471 U.S. at pp. 472-473 [85 L.Ed.2d at pp. 540-541]), and the "controversy is related to or 'arises out of' a defendant's contacts with the forum." (*Helicopteros, supra*, 466 U.S. at p. 414 [80 L.Ed.2d at p. 411]; see also *Burger King, supra*, 471 U.S. at p. 472 [85 L.Ed.2d at pp. 540-541].) It is this type of personal jurisdiction that Vons seeks to establish in this case.

The United States Supreme Court has described the forum contacts necessary to establish specific jurisdiction as involving variously a nonresident who has "purposefully directed" his or her activities at forum residents (*Burger King, supra*, 471 U.S. at p. 472 [85 L.Ed.2d at p. 541]), or who has "purposefully derived benefit" from forum activities (*id.* at p. 473 [85 L.Ed.2d at p. 541]), or " 'purposefully avail[ed himself or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " (*Id.* at p. 475 [85 L.Ed.2d at p. 542].) The court also has referred to the requisite forum contact as involving a nonresident defendant who " 'deliberately' has engaged in significant activities with a State [citation] or has created 'continuing obligations' between himself and residents of the forum [citation]" (*id.* at pp. 475-476 [85 L.Ed.2d at p. 543]), concluding that in such cases the defendant "manifestly has availed himself of the privilege of conducting business [in the forum], and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (*Id.* at p. 476 [85 L.Ed.2d at p. 543].)

According to the high court, it is fair to subject defendants to specific jurisdiction, because their forum activities should put them on notice that they will be subject to litigation in the forum. That is, "[w]hen a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' [citation] it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great,

severing its connection with the state." (*World-Wide Volkswagen, supra*, 444 U.S. at p. 297 [62 L.Ed.2d at p. 501].) This element of fair warning gives "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (*Id.* at p. 297 [62 L.Ed.2d at p. 501].)

The United States Supreme Court has explained, for example, that a state properly may exercise specific jurisdiction when it " 'asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and those products subsequently injure forum consumers. [Citation.] Similarly a publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story. [Citations.]" (*Burger King, supra*, 471 U.S. at p. 473 [85 L.Ed.2d at p. 541].) And in the case of litigation arising out of an ongoing franchise agreement, the high court has found proper a Florida court's exercise of specific jurisdiction over a franchise operator located in Michigan, emphasizing that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." (*Ibid.*)

A state may exercise specific jurisdiction over a nonresident who purposefully avails himself or herself of forum benefits, because the state has "a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. [Citations.] Moreover, where individuals 'purposefully derive benefit' from their interstate activities [citation] it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." (*Burger King, supra*, 471 U.S. at pp. 473-474 [85 L.Ed.2d at p. 541].) Further, "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." (*Id.* at p. 474 [85 L.Ed.2d at p. 541].)

Finally, in analyzing the exercise of specific jurisdiction, "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " (*Burger King, supra*, 471 U.S. at p. 476 [85 L.Ed.2d at p. 543], quoting *International Shoe, supra*, 326

U.S. at p. 320 [90 L.Ed. at p. 104].) Courts may evaluate the burden on the defendant of appearing in the forum, the forum state's interest in adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and "the 'shared interest of the several States in furthering fundamental substantive social policies.'" (*Burger King, supra,* 471 U.S. at p. 477 [85 L.Ed.2d at p. 543].)

This court examined the problem of specific jurisdiction in *Cornelison, supra,* 16 Cal.3d 143. There we held that a California resident could sue a Nebraska defendant in California for wrongful death in connection with an accident that occurred in Nevada. Because the defendant was engaged in the business of hauling goods by truck and made fairly frequent deliveries in California, and the accident occurred while he was en route to California for further deliveries, we found a "substantial nexus between plaintiff's cause of action and defendant's activities in California." (*Id.* at p. 149.) We explained that the appropriate inquiry is whether the plaintiff's cause of action "arises out of or has a substantial connection with a business relationship defendant has purposefully established with California." (*Ibid.*) We commented that if, as we found, the defendant's activities are not so wide ranging as to justify general jurisdiction, "then jurisdiction depends upon the quality and nature of his activity in the forum *in relation to* the particular cause of action. In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action *arises out of or has a substantial connection* with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction." (*Id.* at pp. 147-148, fn. omitted, italics added, citing *Hanson* v. *Denckla* (1958) 357 U.S. 235, 250-253 [2 L.Ed.2d 1283, 1295-1298, 78 S.Ct. 1228]; *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199]; and *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57].)

B

Applying the teaching of *Burger King, supra,* 471 U.S. 462, and *Cornelison, supra,* 16 Cal.3d 143, we must determine whether the courts of

this state properly may exercise specific jurisdiction over Seabest and WRMI.

■ When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. (*State of Oregon* v. *Superior Court* (1994) 24 Cal.App.4th 1550, 1557 [29 Cal.Rptr.2d 909].) Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. (*Burger King, supra,* 471 U.S. at pp. 476-477 [85 L.Ed.2d at pp. 543-544].) When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. (*Felix* v. *Bomoro Kommanditgesellschaft* (1987) 196 Cal.App.3d 106, 111 [241 Cal.Rptr. 670, 69 A.L.R.4th 1].) When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. (*Great-West Life Assurance Co.* v. *Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204 [252 Cal.Rptr. 363].)

■ We conclude that this state may exercise specific jurisdiction over Seabest and WRMI. Indeed, this case closely resembles *Burger King, supra,* 471 U.S. 462, which, we believe, largely governs the outcome here. As we explain, the cross-defendants here, like the defendants in *Burger King,* purposefully availed themselves of benefits in the forum by reaching out to forum residents to create an ongoing franchise relationship.

In *Burger King, supra,* 471 U.S. 462, a Florida corporation sued its Michigan franchisee in the federal district court in Florida for breach of the franchise agreement. The franchisee appeared specially and claimed that because he was a Michigan resident doing business only in Michigan, and because the claim did not "arise" in Florida, the district court lacked jurisdiction over him. The Supreme Court disagreed. It held the franchisee, through his continuing contractual obligations to the Florida corporation, purposefully had availed himself of the privilege of conducting business in Florida. The high court declared that, although a nonresident defendant does not necessarily become subject to the specific jurisdiction of the forum state simply by entering into a contract with a resident of the forum (*Burger King, supra,* 471 U.S. at p. 478 [85 L.Ed.2d at pp. 544-545]), the exercise of specific jurisdiction over the out-of-state franchisee was appropriate in the case before it because of ongoing franchise relations very similar to those involved here.

As already noted, the court declared that "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out

beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.' " (*Burger King*, *supra*, 471 U.S. at p. 473 [85 L.Ed.2d at p. 541].) The court observed that the dispute in question grew out of a contract that had a "substantial connection" with the forum state. (*Id.* at p. 479 [85 L.Ed.2d at p. 545], italics omitted.) The court acknowledged that the franchisee was supervised directly by the Michigan Burger King office, but noted that, as in the present case, the franchisee made monthly payments to (and agreed that his operations would be regulated by) corporate headquarters in the forum state. It was important to the court that the Michigan franchisee, although he had no physical presence in Florida, had agreed to an ongoing contractual relationship under which it was established that any disputes would be governed by Florida law. (*Id.* at p. 481 [85 L.Ed.2d at pp. 546-547].)

The court found it significant that, as in the case before us, the franchisee knew he was affiliating himself with a business with headquarters in the forum state, and that his operations would be supervised by that headquarters. (*Burger King*, *supra*, 471 U.S. at p. 480 [85 L.Ed.2d at pp. 545-546].) The franchisee had reached out beyond Michigan and negotiated with a Florida corporation to take advantage of the significant benefits that would flow from affiliation with the Burger King name and organization. The court stated: "In light of [the franchisee's] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.' " (*Id.* at p. 480 [85 L.Ed.2d at p. 545].) The court cautioned that no mechanical test exists to determine whether a defendant purposefully has availed himself or herself of forum benefits by entering into a contract in the forum. (*Id.* at pp. 478-479 [85 L.Ed.2d at p. 545].) Rather, the court "emphasized the need for a 'highly realistic' approach" in which the court examines prior negotiations, future consequences of the contract, the terms of the contract, and the parties' dealings with each other. (*Id.* at p. 479 [85 L.Ed.2d at p. 545].)

The court's discussion in *Burger King*, *supra*, 471 U.S. 462, makes it clear that if Foodmaker had sued Seabest and WRMI in California in a breach of contract action based on the franchise agreements, it would have had no difficulty in establishing California's jurisdiction. As in *Burger King*, the franchisees here reached out to the California Foodmaker business, and clearly sought out and benefited from the California business's multistate name recognition and organization. The franchisees purposefully undertook ongoing contractual obligations to the California business, and agreed that any disputes arising out of the contract not only would be governed by

California law, but also would be *litigated in California*. Therefore, it was not only predictable that they might face litigation in California—it was *settled* that any litigation on the contract would occur in this forum. In addition, Seabest and WRMI made substantial and continuing purchases from Foodmaker in California. (See *Rocklin De Mexico, S.A.* v. *Superior Court* (1984) 157 Cal.App.3d 91, 95, 98 [203 Cal.Rptr. 547] [asserting regular purchasing contacts would induce a reasonable defendant to foresee the possibility of being brought into court in the forum].)

If Foodmaker were to seek indemnification from Seabest or WRMI for any liability Foodmaker suffered as a result of Seabest's or WRMI's under-cooking of meat in Washington, the contacts between the Washington franchisees and this forum and Foodmaker also were such that California's exercise of jurisdiction would be proper over the Washington franchisees. The franchise agreement, after all, provided that the Washington franchisees would prepare their products in conformance with Foodmaker's regulations, and any alleged failure to do so would create an injury that arose from the contract and from the Washington franchisees' contacts with California.

That a court would have no difficulty finding specific jurisdiction in such hypothetical lawsuits brought by Foodmaker demonstrates that Seabest and WRMI purposefully availed themselves of the benefits of doing business with the California Foodmaker enterprise. They formed a substantial economic connection with this state. To require them to answer Vons's claim, as well, is not to allow a third party unilaterally to draw them into a connection with the state; rather, it was Seabest and WRMI who established the connection. Nor would the exercise of jurisdiction in this state over Vons's claim depend on "random, fortuitous or attenuated" contacts. Rather, as we have seen, Seabest and WRMI had an ongoing commercial relationship in this forum.

We recognize that the court in *Burger King*, *supra*, 471 U.S. 462, did not specifically discuss the further requirement that the claim "arise out of" or be "related to" the defendant's forum activity in order to warrant the exercise of specific jurisdiction, and that the meaning of that requirement is implicated in the present case.[4] We also recognize that in *Burger King*, the claim involved a contract action that arose *directly* from the forum contact, that is,

---

[4]The high court has declined to clarify the relatedness element of specific jurisdiction. (See, e.g., *Carnival Cruise Lines* v. *Shute* (1991) 499 U.S. 585, 589 [113 L.Ed.2d 622, 629, 111 S.Ct. 1522] [declining to reach the issue whether a cruise company's contacts in Washington state were sufficiently connected to a slip and fall injury that occurred on board a ship, when the vessel was located outside the forum, to warrant the exercise of specific jurisdiction; the court decided the case on a narrower forum selection clause in the contract]; *Helicopteros*, *supra*, 466 U.S. at p. 415, fn. 10 [80 L.Ed.2d at p. 411] [because the parties did not argue the

the ongoing franchise relationship, and that the litigation involved the same parties as were involved in the forum contact. The present case is distinguishable from *Burger King* in that the cross-complainant was not a party to the franchise contract, and thus the claim is not on the contract as was the dispute in *Burger King*. This distinction, however, does not render the exercise of specific jurisdiction improper.

■ A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate. The due process clause is concerned with protecting nonresident defendants from being brought unfairly into court in the forum, on the basis of random contacts. That constitutional provision, however, does not provide defendants with a shield against jurisdiction when the defendant purposefully has availed himself or herself of benefits in the forum. The goal of fairness is well served by the standard we originally set out in *Cornelison*, *supra*, 16 Cal.3d 143, that is, there must be a *substantial connection* between the forum contacts and the plaintiff's claim to warrant the exercise of specific jurisdiction. (*Id.* at p. 148.)

As we said in *Cornelison*, and as the high court suggested in *International Shoe*, *supra*, 326 U.S. 310, for the purpose of establishing jurisdiction the intensity of forum contacts and the connection of the claim to those contacts are inversely related. (See *International Shoe*, *supra*, 326 U.S. at p. 317 [90 L.Ed. at pp. 102-103] [" 'Presence' in the state . . . has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on . . . . Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities . . . are not enough to subject it to suit on causes of action unconnected with the activities there."].) The explanation we set out in *Cornelison* bears repeating: "[A]s the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action *arises out of or has a substantial connection with that activity*,

issue, the majority in *Helicopteros* did not reach the question whether "a forum's exercise of personal jurisdiction in a situation where the cause of action 'relates to,' but does not 'arise out of,' the defendant's contacts with the forum should be analyzed as an assertion of specific jurisdiction"]; but see *id.* at p. 425 [80 L.Ed.2d at p. 418] (dis. opn. of Brennan, J.) [asserting that although the claim did not arise out of forum activities, it was related to those activities, which were relevant to establish specific jurisdiction].)

and the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction." (*Cornelison, supra,* 16 Cal.3d at p. 148, fn. omitted, italics added; see also *Northrup King* v. *Compania Productora Semillas* (8th Cir. 1995) 51 F.3d 1383, 1388 [nature of defendant's contacts with forum "closely interrelated" with question of connection of contacts with plaintiff's cause of action]; Richman, *Review Essay, Part II—A Sliding Scale to Supplement the Distinction Between General and Specific Jurisdiction* (1984) 72 Cal.L.Rev. 1328, 1340 et seq. [viewing intensity of defendant's contacts and relationship of contacts to claim on a continuum, so that the greater the intensity of forum activity, the lesser the relationship required between the contact and the claim].) ▮ When, as here, the defendants sought out and maintained a continuing commercial connection with a California business, it is not necessary that the claim arise directly from the defendant's contacts in the state. Rather, as is discussed further below, because of the defendants' relationship with the forum, it is not unfair to require that they answer in a California court for an alleged injury that is substantially connected to the defendants' forum contacts.

Seabest argues that the standard we set forth in *Cornelison, supra,* 16 Cal.3d 143, and the result we reached in that case, are "at or beyond the outer-most limits of what the Due Process Clause will countenance." (See also Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction* (1980) Sup. Ct. Rev. 77, 84 (*How Contacts Count*) [criticizing *Cornelison* for considering contacts in the forum that are merely *similar* to the nonforum conduct that injured the plaintiff].) It argues such a formulation erases the distinction between general and specific jurisdiction, and is inconsistent with cases decided by the United States Supreme Court "insisting on a direct and concrete nexus between the forum, the specific allegations in a lawsuit, and the defendant's particularized activity in the forum as related to the allegations in the lawsuit to support the exercise of specific jurisdiction."

We disagree. The high court has not provided precise criteria regarding the particular issue before us—that is, the necessary relationship between the plaintiff's cause of action and the defendant's contacts in the forum. It has stated the applicable standard in much broader terms than those proposed by Seabest, however, requiring only that a plaintiff's cause of action be "related to or 'arise[] out of' a defendant's contacts with the forum." (*Helicopteros, supra,* 466 U.S. at p. 414 [80 L.Ed.2d at p. 410]; see also *Burger King, supra,* 471 U.S. at p. 472 [85 L.Ed.2d at pp. 540-541].) To require that there be a substantial nexus or connection between the plaintiff's cause of action and the defendant's forum contacts is in no way inconsistent with this standard, or with the rationale the high court has provided for the exercise of specific

jurisdiction. Nor does such a standard eliminate the distinction between general and specific jurisdiction, for it retains the requirement that specific jurisdiction be based upon a connection between the plaintiff's claim and the defendant's forum contacts.

The formulation expressed in *Cornelison, supra,* 16 Cal.3d 143—that the state may exercise specific jurisdiction if there is a substantial connection or nexus between forum contacts and the litigation—is not unique. The same flexibility and emphasis on the nature of the relationship between the claim and the forum contacts is demonstrated in the approach taken by the United States Court of Appeals for the Seventh Circuit in *In re Oil Spill by Amoco Cadiz Off Coast of France* (7th Cir. 1983) 699 F.2d 909 (*Amoco Cadiz*). There, the court of appeals, in an opinion by then Judge, now Chief Judge Posner, approved the federal district court's exercise of jurisdiction in Illinois over a Spanish shipbuilder in a case in which French citizens injured by an oil spill off the coast of France sued the shipbuilder in tort for negligent and defective design of the ship. The French citizens also sued affiliates of the shipowner's parent company for damage caused by negligent operation of the ship, and the affiliates of the parent company cross-claimed against the shipbuilder for indemnity.

The court concluded that the Spanish shipbuilder's contacts with Illinois, that is, the course of negotiations and the signing of the shipbuilding contract in Illinois, were sufficiently connected to the oil spill off the coast of France to warrant the exercise of specific jurisdiction with respect to the claims of the French citizens injured by the spill. The court observed that although the French plaintiffs were not party to the contract negotiations in Illinois—just as Vons was not in contract with Seabest or WRMI—they were harmed by the shipowner's operation of the ship in its defective condition, "and the negotiation and signing of the contract were critical steps in the chain of events that led to the oil spill." (*Amoco Cadiz, supra,* 699 F.2d at p. 917.) Noting that it was particularly reasonable to permit the court in Illinois to exercise jurisdiction to allow all claims arising out of a single catastrophe to be litigated in the same court, it concluded that the exercise of jurisdiction over the Spanish shipbuilder did not offend notions of due process. (*Ibid.*)

Similarly, the Sixth Circuit has explained that the relatedness criterion requires only that the plaintiff's claim have a substantial connection with the defendant's forum activities to warrant the exercise of specific jurisdiction. (*Third Nat. Bank in Nashville* v. *Wedge Group Inc.* (6th Cir. 1989) 882 F.2d 1087, 1091.) In that case, the defendant was a Delaware corporation that owned a subsidiary that did business in Tennessee and was involved in the subsidiary's financial transactions in Tennessee. Plaintiff Third National

Bank sued the Delaware corporation in Tennessee to enforce Third National Bank's rights as a secured creditor under contracts the defendant's subsidiary had entered into with it. Defendant argued the action did not arise out of its own business contacts with the forum, so that the Tennessee court could not properly exercise jurisdiction. The federal appeals court disagreed, stating that the relatedness element of specific jurisdiction "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, *have a substantial connection with* the defendant's in-state activities.' . . . 'Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact].'" (*Ibid.*) The defendant's contacts in the forum had a "close relationship" with the action, because defendant interjected itself into loan negotiations between the bank and the subsidiary, was a party to a tax sharing agreement that formed a part of the bank's claim, and deposited funds with the bank to induce it to enter into the loan agreement with the subsidiary. (*Ibid.*)

The federal circuit also has chosen to apply a flexible standard, deciding in *Akro Corp.* v. *Luker* (Fed.Cir. 1995) 45 F.3d 1541 that a California patent holder was subject to jurisdiction in an action for declaratory judgment of noninfringement in Ohio, because the patent holder had sought to protect the patent in Ohio and because the patent holder had entered into an exclusive licensing agreement with an Ohio company not involved in the litigation. As for the relationship between the action and the defendant's forum contacts, the court observed that forum contacts need not be directed at the plaintiff in order to warrant the exercise of specific jurisdiction, and that the "arising out of or relating to" standard is in the disjunctive, and is intended as a relaxed, flexible standard, rather than one requiring that the plaintiff's claim arise out of the forum contact in any narrow sense. (*Id.* at p. 1547.) The court also suggested that the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim. (*Ibid.*; see also *Northrup King* v. *Compania Productora Semillas*, *supra*, 51 F.3d at pp. 1387-1388 [considering "connection" between contacts and breach of contract cause of action; although some forum contacts, including meetings to discuss possible future business relations, were not directly related to the breach of contract claim, they were an "essential part of the course of dealing" between the parties leading to the contract]; *Francosteel Corp.* v. *M/V Charm* (11th Cir. 1994) 19 F.3d 624, 627 [requiring simply that the defendant's contacts be "related" to the plaintiff's claim, but deciding that an international shipping contract calling for delivery of goods in the forum was insufficient when none of the events giving rise to the cause of action took place in the forum, none of the parties was a forum

resident, the contract was negotiated outside the forum, and the loss occurred when the ship went down in international waters, before delivery]; *Vermeulen* v. *Renault, U.S.A., Inc.* (11th Cir. 1992) 985 F.2d 1534, 1546, 1550 [contacts must be "related" to the plaintiff's claim or have given rise to it; Renault's design of an automobile for the United States market, advertising of the vehicle in the forum, and maintenance of a distribution network in the forum were sufficiently related to a products liability action, because they were "inextricable links" by which the forum resident obtained the vehicle].)

In sum, considering the rationale of the specific jurisdiction doctrine, the language in which the high court has described the doctrine, and the federal cases discussed above applying the doctrine, we conclude that a nonresident defendant may be subject to the specific jurisdiction of this state if the defendant purposefully has availed itself of forum benefits through an ongoing franchise agreement and there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.

Applying this standard, Vons has demonstrated a substantial nexus between WRMI's and Seabest's business contacts in California and Vons's tort claims against WRMI and Seabest. It is consistent with due process for Seabest and WRMI to be required to appear in the action in this forum; not only did they purposefully avail themselves of forum benefits through their ongoing, comprehensive and profitable contacts with the forum, but the plaintiff's claims against them bore a substantial relationship to their forum contact for two reasons.

First, the relationship Seabest and WRMI established in the forum drew these defendants and Vons into a relationship as alleged joint tortfeasors, with some joint liability and rights of indemnification. WRMI and Seabest established an ongoing contractual relationship with Foodmaker in California, and agreed to buy food supplies from Foodmaker (or from suppliers approved by Foodmaker) and to follow Foodmaker's directions in preparing food in the Washington restaurants. Seabest and WRMI actually bought all their hamburger patties from Foodmaker, which in turn was supplied by Vons and other purveyors. Although it was Foodmaker's Washington distribution center that delivered the meat to Seabest and WRMI, Seabest and WRMI paid Foodmaker's San Diego corporate headquarters for the supplies over a period of years. Accordingly, it appears that Seabest and WRMI bought Vons's contaminated meat from Foodmaker pursuant to the franchise agreement. It was pursuant to the ongoing contractual arrangement that the contaminated meat was delivered to Seabest and WRMI. Because of the contractual relationship in California, Vons, Seabest, and WRMI became, it is alleged, joint or concurrent tortfeasors with respect to the injured franchisees and consumers—Vons for supplying the contaminated meat, and Seabest and WRMI for failing to cook it properly. The contract in California put

Vons, Seabest, and WRMI in a position to become jointly liable under California law for harm caused by the meat (Civ. Code, §§ 1431, 1431.2; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 48, 51, pp. 110, 112), thereby giving Vons a potential claim for indemnification against Seabest and WRMI. (See 5 Witkin, Summary of Cal. Law, *supra*, § 89, p. 162.)[5]

Second, the franchise relationship, with its uniform standards for cooking food, training employees, and buying equipment, itself was a source of injury to Vons. To the extent that, as the complaint alleged, Foodmaker's procedures were "systematically deficient when measured by industry standards," and, as indicated by evidence offered below by Vons, these procedures were imposed on Seabest and WRMI pursuant to the franchise agreement, the contractual contact in California was a contributing cause of the injuries alleged to have been inflicted by Seabest and WRMI upon restaurant customers and other franchisees—as to which Vons assertedly had concurrent liability and some right to indemnification—as well as a contributing cause of the injuries to reputation claimed by Vons, because its meat was blamed for the illness and death of customers.[6] Accordingly, both the negligence claims and the claim for indemnification arose out of the contractual relationship between Foodmaker, WRMI, and Seabest, a relationship that had a substantial connection to California.

The Court of Appeal below focused on an asserted lack of relationship between Vons, on the one hand, and Seabest and WRMI, on the other. The court suggested this lack of relationship was critical in determining whether the claim was sufficiently related to the forum contacts to permit the exercise of specific jurisdiction in California. Contrary to the Court of Appeal's thesis, however, the defendant's forum activities need not be directed at the *plaintiff* in order to give rise to specific jurisdiction. (See, e.g., *Keeton* v. *Hustler Magazine, Inc.* (1984) 465 U.S. 770, 775 [79 L.Ed.2d 790, 798, 104 S.Ct. 1473] [publisher that distributes magazines to the public in a distant state may be held accountable in that forum for damage to victim of defamation]; *Cornelison, supra,* 16 Cal.3d 143 [jurisdiction found although the defendant's business activities in California were not directed at the accident victim]; *Akro Corp.* v. *Luker, supra,* 45 F.3d at p. 1547 ["plaintiff need not be the forum resident toward whom any, much less all, of the

[5]Of course, it is not settled that California law would apply with respect to the claim for indemnification, because the choice-of-law decision has yet to be made.

[6]WRMI's claim that Vons first raised in this court the theory that the franchise agreement actually caused the injuries is not supported by the record. WRMI's contention that the manual directing franchisees as to required cooking procedures is not part of the record, and hence that Vons cannot prove the procedures were inadequate systemwide, appears to be directed to the merits of Vons's substantive claim, rather than to the jurisdictional question. It is the latter question, of course, that is before us.

defendant's relevant activities were purposefully directed"]; *Amoco Cadiz, supra,* 699 F.2d at p. 917 [French victims of oil spill may bring a tort action against a Spanish shipbuilder in an Illinois court; their claim "could readily be said to arise from the negotiating and signing, in Illinois, of the [shipbuilding] contract," even though the negotiations obviously were not directed at the plaintiffs].) ▆▆ The United States Supreme Court has stated more than once that the nexus required to establish specific jurisdiction is between the defendant, *the forum,* and the litigation (*Helicopteros, supra,* 466 U.S. at p. 411 [80 L.Ed.2d at p. 409]; *Shaffer* v. *Heitner* (1977) 433 U.S. 186, 204 [53 L.Ed.2d 683, 697-698, 97 S.Ct. 2569])—not between the plaintiff and the defendant. For the purpose of deciding whether a defendant has minimum contacts or purposefully has availed itself of forum benefits, the relevant contacts are said to be with the *forum,* because it is the defendant's choice to take advantage of opportunities that exist in the forum that subjects it to jurisdiction. (*Asahi Metal Industry Co.* v. *Superior Court* (1987) 480 U.S. 102, 112 [94 L.Ed.2d 92, 104-105, 107 S.Ct. 1026] (plur. opn. by O'Connor, J.); *Burger King, supra,* 471 U.S. at pp. 475, 479 [85 L.Ed.2d at pp. 542, 545]; *Helicopteros, supra,* 466 U.S. at p. 414 [80 L.Ed.2d at p. 409]; *Shaffer* v. *Heitner, supra,* 433 U.S. at p. 204 [53 L.Ed.2d at pp. 697-698].)

Seabest argues none of its physical contacts in California—by phone, visit, or letter—are relevant to the alleged injury, that is the illness caused by the undercooking of meat in Washington. It argues Vons's claims have no connection with California, asserting that these claims are based solely upon a violation of Washington law—that violation consisting of a failure to cook hamburgers to the proper internal temperature. This argument views both Vons's claim and Seabest's contacts with this forum far too narrowly. Seabest, like the defendant in *Burger King, supra,* 471 U.S. 462, purposefully availed itself of an ongoing contractual relationship with a business in the forum, deriving substantial advantage from that business's multistate reputation and the standardization provided for under the franchise agreement. This forum contact bore a substantial relationship to the claimed injury to Vons's business and reputation, because Seabest acquired Vons's tainted meat from Foodmaker pursuant to purchases under the franchise agreement and cooked it according to the standards provided under the franchise agreement. Far from basing its claim solely or primarily upon an allegation that the franchisees violated Washington law, Vons's cross-complaint alleged that the franchisees failed to cook the meat properly because of deficiencies in the cooking and training procedures and equipment requirements provided for by Foodmaker on a system-wide basis.[7]

WRMI argues strenuously that there was no substantial nexus between its California contacts and Vons's negligent handling of the meat. Conceding

---

[7]To the extent Seabest also may be understood to argue that the contacts of the individual franchisees before its incorporation cannot be attributed to it, the argument is questionable. It

that a defendant does not necessarily have to have had a prior relationship with the plaintiff in order for specific jurisdiction to be established, WRMI asserts that cases finding jurisdiction despite a lack of prior relationship between the plaintiff and the defendant turn upon a finding of a substantial nexus between the defendant's forum activities and the plaintiff's claim—a nexus that WRMI argues is missing in this case. In *Cornelison, supra,* 16 Cal.3d 143, for example, WRMI claims we found a substantial relationship because the accident arose out of the very activity that formed the essential basis of the defendant's contacts with California. Here, by contrast, WRMI contends—as does Seabest—that its improper cooking of hamburgers in Washington had nothing directly to do with its forum-based activities. Although it concedes that the franchise agreement gave Foodmaker the right to dictate WRMI's food preparation methods, WRMI argues this was of minimal significance. Rather, it contends, the benefit that WRMI bargained for when it entered into the agreement was not the privilege of having Foodmaker supervise it, but the benefit gained from association with a regionally known chain. Moreover, WRMI asserts that by entering into the agreement, it did not seek to conduct any business in California, did not own property in California, has no employees in California, and never has contracted or done business directly with Vons. Finally, WRMI claims Vons failed to demonstrate that Foodmaker actually directed Seabest or WRMI to use substandard training, equipment, and cooking methods.

We are not persuaded. The relationship of Vons's claim to WRMI's forum activities is less attenuated than the relationship of the accident victim's claim to the defendant's forum activities in *Cornelison, supra,* 16 Cal.3d 143. We did not hold in that case that *only* an injury caused by the very activity that formed the defendant's forum contacts would give rise to specific jurisdiction. Indeed, under WRMI's reading of the case, a state never could exercise jurisdiction over a tort claim arising from a contractual

is generally true that the defendant's own contacts are considered for the purpose of jurisdiction (*Burger King, supra,* 471 U.S. at pp. 474-475 [85 L.Ed.2d at pp. 541-542]; *Sibley v. Superior Court* (1976) 16 Cal.3d 442, 447-448 [128 Cal.Rptr. 34, 546 P.2d 322]), but corporate veils may be pierced and agents' activities may be considered in appropriate cases. (See, e.g., *Calder v. Jones* (1984) 465 U.S. 783, 789-790 [79 L.Ed.2d 804, 812-813, 104 S.Ct. 1482]; *Seagate Technology v. A. J. Kgoyo Co.* (1990) 219 Cal.App.3d 696, 701-702 [268 Cal.Rptr. 586]; *Wisconsin Elec. Mfg. Co., Inc. v. Pennant Products* (7th Cir. 1980) 619 F.2d 676, 677-678; 1 Casad, Jurisdiction in Civil Actions (2d ed. 1991) § 4.03[4], p. 4-13.) In Seabest's case, the corporate owners were identical to the individual franchisees (except that one individual had died), and indeed the individuals remained liable on the franchise agreement. (See 1 Casad, Jurisdiction in Civil Actions, *supra,* § 4.03[5] [d], p. 4-140 [court may impute contacts of corporation's predecessor if successor liable for obligations of predecessor].) In any event, in finding the requisite contacts, we rely only upon contacts that occurred after the incorporation, and upon the franchise agreement itself, by which Seabest obviously was bound.

contact. Such a result, however, would be inconsistent with the fairness rationale underlying specific jurisdiction, by which courts recognize that defendants who purposefully avail themselves of forum benefits may have to answer claims against them in the forum. Nor would it be consistent with Chief Judge Posner's analysis in *Amoco Cadiz, supra,* 699 F.2d 909, or with the other federal cases discussed above, which recognize that a tort claim arising out of a contractual relationship may be sufficiently connected to the forum contact to give rise to specific jurisdiction.

Further, WRMI's claim that it did no business in California and derived no economic benefit from this state is belied by the ongoing contractual relationship it entered into with Foodmaker, a relationship by which WRMI sought to secure to itself the benefits the California business could provide in terms of ready-made goodwill for WRMI's restaurants, as well as an easy-to-follow format for establishing and running these businesses. In any event, jurisdiction is not limited to litigation over bargained-for contract benefits when a tort claim is at stake. As in *Amoco Cadiz, supra,* 699 F.2d 909, in which the contractual activities in the state sufficed to establish specific jurisdiction even though they did not relate directly to the oil spill off the coast of France, subjecting defendants to jurisdiction is not unfair simply because the plaintiff's claim did not involve one of the specific benefits defendant anticipated would flow from doing business in the forum. Finally, it is obvious that Vons is not required to *prove* the allegations of its cross-complaint in order to establish that jurisdiction is proper in this forum. (*Edmunds* v. *Superior Court* (1994) 24 Cal.App.4th 221, 228 [29 Cal.Rptr.2d 281].)

## C

■ In opposition to the conclusion we reach, the Court of Appeal determined (and Seabest and WRMI argue) that the connection between the forum contacts of these cross-defendants and Vons's asserted claims against them fails to meet various tests of "relatedness" that they assert are required by the doctrine of specific jurisdiction. In addition, Vons urges us to adopt a more expansive test of "relatedness" than the one we have embraced. The various theories offered by the Court of Appeal and the parties are not persuasive, however, at least in the context of the type of ongoing franchise relationship that has been demonstrated in this case. We must recall that the United States Supreme Court has rejected the use of "talismanic jurisdictional formulas" (*Burger King, supra,* 471 U.S. at p. 485 [85 L.Ed.2d at p. 549]), stating that " 'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.' " (*Id.* at pp. 485-486 [85 L.Ed.2d at p. 549].)

The Court of Appeal declared that it did not need to determine whether Seabest and WRMI had "purposefully availed" themselves of the privilege of conducting business activities in this state, because even if they had, the causes of action against them did not "arise out of" or "relate to" those activities. The appellate court reached this conclusion because of its view that Seabest's and WRMI's contacts with California did not *cause* Vons's claim. The court believed it was required to apply an extremely narrow test of causation in deciding whether there was a sufficient connection between the activity and the cause of action. Under the test formulated by the Court of Appeal, unless the forum contact *proximately caused* the occurrence that injured the plaintiff, the connection between the contacts and the claim is insufficient to permit the exercise of specific jurisdiction.

The Court of Appeal relied principally upon two cases in attempting to demonstrate the proper application of such a test. As will appear, we disapprove the reasoning of these cases to the extent they are inconsistent with this opinion. In the first case, *Circus Circus Hotels, Inc.* v. *Superior Court* (1981) 120 Cal.App.3d 546 [174 Cal.Rptr. 885] (*Circus Circus*), California residents brought a tort cause of action in this state against a Nevada hotel corporation. They sought damages for losses they incurred while on vacation in Nevada, alleging that the hotel's negligence was the cause of a burglary of their hotel room. They alleged that the Nevada hotel's substantial advertising campaign in California induced them to patronize the hotel. The reviewing court found the connection between the cause of action and the Nevada hotel's activities in California insufficient to warrant this state's exercise of jurisdiction. The court observed: "It could not be seriously contended that the defendant's advertising was the *proximate cause* of the burglary . . . ." (*Id.* at p. 569, italics added.)

As additional support, the Court of Appeal below relied upon *Sklar* v. *Princess Properties International, Ltd.* (1987) 194 Cal.App.3d 1202 [240 Cal.Rptr. 102] (*Sklar*). In that case, the plaintiff, a California resident, filed a tort action in this state against a Bermuda hotel corporation, alleging personal injuries sustained in a fall at the hotel. The plaintiff alleged the hotel contracted through its agents for plaintiff's accommodations in a California transaction and engaged in advertising in California. The Court of Appeal found insufficient the connection between the activity alleged to have occurred in the forum state and plaintiff's cause of action. It said: "It cannot seriously be contended that sale to plaintiff in California of accommodations at defendant's hotel in Bermuda was the *proximate cause* of plaintiff's personal injuries . . . ." (*Id.* at p. 1208, italics added.)

Applying the standard it derived from these cases, the Court of Appeal explained: "In the present case, defendants' act or omission alleged to have

caused damage to Vons and for which it seeks indemnification is the undercooking of hamburgers in the state of Washington. It cannot seriously be contended that but for defendants [*sic*] activities in California . . . the hamburger patties would not have been undercooked in Washington." The Court of Appeal also emphasized that defendants had no relationship with Vons, and that, "[i]n short, the causal link between defendants' . . . franchise relationship with Foodmaker and the alleged failure to properly cook hamburgers in Washington is too attenuated to say the injury arose from the activities of Seabest and WRMI in this state." As is evident, although the Court of Appeal used the term "but for" in discussing whether an adequate relationship had been shown between the forum contacts and the plaintiff's claim, the test actually applied was a proximate cause test as used in *Circus Circus*, *supra*, 120 Cal.App.3d 546, and *Sklar*, *supra*, 194 Cal.App.3d 1202, whose focus is whether the forum contact was the legal cause of the plaintiff's injuries.

The Court of Appeal's holding that jurisdiction cannot exist unless the alleged injury was proximately caused by the contacts in the forum state—in the sense that the contacts were the immediate preceding legal cause of plaintiff's injury—is untenable, at least in the franchise setting. To require that the injury be proximately caused by the forum contact is to require that the injury "arise out of" the forum contact in the strictest sense. Such a requirement is inconsistent with the formulation that appears in *Burger King* and *Helicopteros*, which, as noted above, states in the disjunctive that jurisdiction is proper when litigation results from alleged injuries that " 'arise out of *or relate to*' " forum activities. (*Burger King*, *supra*, 471 U.S. at p. 472 [85 L.Ed.2d at p. 541], italics added; *Helicopteros*, *supra*, 466 U.S. at p. 414, fn. 9 [80 L.Ed.2d at p. 411]; see also *International Shoe*, *supra*, 326 U.S. at p. 319 [90 L.Ed. at p. 104] ["The exercise of that privilege [forum activities] may give rise to obligations, and, so far as those obligations arise out of *or are connected with* the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."].) Similarly, such a requirement is inconsistent with the relevant standard in *Cornelison*, *supra*, 16 Cal.3d at page 148, wherein we stated, also in the disjunctive, that the proper inquiry is "whether the cause of action arises out of *or has a substantial connection with* that [forum] activity." (Italics added.)

A proximate cause test as applied in the foregoing Court of Appeal cases would prohibit the exercise of specific jurisdiction in most contract actions arising out of ongoing interstate contractual relations—the sort of case in which specific jurisdiction is most obviously appropriate. This is so because the contractual relationship usually cannot be said to *cause* a party to fail to

live up to the terms of the contract. If only an injury proximately caused by the forum contact could give rise to specific jurisdiction, the United States Supreme Court would have reached a different result in *Burger King, supra,* 471 U.S. 462, because the forum activity in that case (the ongoing contractual relationship in Florida) did not *cause* the injury (the franchisee's failure to make franchise payments in Michigan). Similarly, the Court of Appeal's formulation would have produced a different result in *Cornelison, supra,* 16 Cal.3d 143, where the forum activities (deliveries inside California) did not *cause* the injury (the accident in Nevada).

The United States Supreme Court long ago rejected the notion that personal jurisdiction might turn upon mechanical tests such as a proximate cause test. (*International Shoe, supra,* 326 U.S. at p. 319 [90 L.Ed. at pp. 103-104] ["It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure."]; *Burger King, supra,* 471 U.S. at p. 478 [85 L.Ed.2d at p. 545] [in discussing whether a contract may be a sufficient contact, the court rejected any mechanical test or " 'conceptualistic . . . theories of the place of contracting or of performance' "]; see also *Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 91, 92 [56 L.Ed.2d 132, 140-141, 98 S.Ct. 1690]; *Shaffer v. Heitner, supra,* 433 U.S. at p. 204 [53 L.Ed.2d at pp. 697-698]; *Cornelison, supra,* 16 Cal.3d at p. 150 [holding that "[t]he question of jurisdiction cannot be decided by the application of some precise formula," and rejecting "a rigid test in favor of a flexible approach grounded in the quality and nature of the activity of the defendant in the state seeking to exercise jurisdiction over him, fairness to the parties, and the orderly administration of the law"].)

Such a proximate cause test also is inconsistent with the fairness rationale underlying the specific jurisdiction doctrine. A person who purposefully avails himself or herself of the benefits of doing business in the forum state must be prepared to answer lawsuits that relate to his or her activity there. (*Burger King, supra,* 471 U.S. at p. 472 [85 L.Ed.2d at pp. 540-541].) The due process clause recognizes the individual's liberty interest in structuring his or her business relations so as to avoid jurisdiction in another forum (*ibid.*; see also *World-Wide Volkswagen, supra,* 444 U.S. at p. 297 [62 L.Ed.2d at p. 501]), but a narrow proximate cause test of the relationship between the plaintiff's claim and the defendant's forum contacts is unnecessary to ensure that interest. Indeed, such a test would shield nonresidents who take advantage of forum benefits from the duty to answer related claims

in the forum for injury the nonresident defendant has caused. As the high court has declared, however, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." (*Burger King, supra*, 471 U.S. at p. 474 [85 L.Ed.2d at p. 541].)

An individual who, in the forum, has entered into an ongoing contractual relationship of the nature described in *Burger King, supra*, 471 U.S. 462, or shown in the present case, has chosen not to structure its business relations to avoid that forum's jurisdiction, but rather has chosen to affiliate with the forum, and reasonably must anticipate exposure to litigation in the forum beyond claims that are in a narrow sense proximately caused by forum activities. This is readily apparent, because the high court has established that it is not the *particular injury* in the forum state that must be foreseeable to the defendant, but rather " 'the foreseeability that is critical to the due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " (*Id.* at p. 474 [85 L.Ed.2d at p. 542].)

Finally, the narrow proximate cause test as applied by the Court of Appeal in the present case has been criticized as improperly importing common law policies limiting tort liability into the entirely unrelated field of jurisdiction. (Rose, *Related Contacts and Personal Jurisdiction: The "But For" Test* (1994) 82 Cal.L.Rev. 1545, 1577 (*Related Contacts*).) Although it is used mechanically in jurisdiction cases, the test operates as an expression of policy in tort cases. As one commentator has observed: "It is particularly difficult to regard proximate or 'legal' causation as a true definition of relatedness because proximate causation usually reflects a policy-based legal filter on 'but for' causation. As Dean Prosser wrote, '[t]he term "proximate cause" is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established.' " (*Ibid.*, fn. omitted.)

Accordingly, we reject the proximate cause test applied by the Court of Appeal in this case, and by the courts in *Sklar, supra*, 194 Cal.App.3d 1202, and *Circus Circus, supra*, 120 Cal.App.3d 546, because it is inconsistent with the rationale underlying specific jurisdiction in the context of an ongoing franchise relationship.

An alternative to the narrow proximate cause test employed by the Court of Appeal, and one that both Vons and WRMI may be understood to urge in support of their own conflicting conclusions, is an analysis focused upon whether a defendant's forum contacts are a "but for" cause of the plaintiff's

claim. Although WRMI argues that Vons's claims fail this test, the test is a broad one that usually is understood as *supporting* expansive exercise of jurisdiction over nonresidents. (See, e.g., Rose, *Related Contacts*, *supra*, 82 Cal.L.Rev. at p. 1577; Note, *Specific Personal Jurisdiction and the "Arise From or Relate to" Requirement . . . What Does it Mean?* (1993) 50 Wash. & Lee L.Rev. 1265, 1277 *(Note)*.)

For example, in *Dialysis at Sea, Inc.* v. *Superior Court* (1989) 216 Cal.App.3d 788 [265 Cal.Rptr. 71] *(Dialysis at Sea)*, a nonresident defendant contracted in California with California residents for special medical services aboard a cruise ship. Defendants provided negligent medical care on board ship outside of California, injuring the plaintiff. The Court of Appeal refused to apply the narrow proximate cause test of *Sklar*, *supra*, 194 Cal.App.3d 1202, and *Circus Circus*, *supra*, 120 Cal.App.3d 546. It observed that under such a test contractual relations formed in one state never could be the basis for jurisdiction over a related tort claim for injuries inflicted in another state. *(Dialysis at Sea, supra, 216 Cal.App.3d at p. 795.)* The appellate court also noted the absence of a "direct connection" between the forum activities in *Sklar*, *supra*, 194 Cal.App.3d 1202, and *Circus Circus*, *supra*, 120 Cal.App.3d 546, and the causes of action asserted therein. It observed, by contrast, that the contract for medical care on board ship in the case before it put the out-of-state defendant within "striking distance" of the plaintiff, allowing the defendant tortiously to injure the California plaintiff. The court declared that the contract was the "but for" cause of the injury, stating that "[i]n other words, 'but for' the contract plaintiff and the decedent would not have been on the cruise and the decedent would not have been subjected to [the defendant's] allegedly negligent medical treatment." (216 Cal.App.3d at p. 795; see also *State of Oregon* v. *Superior Court, supra*, 24 Cal.App.4th 1550 [applying same test to permit exercise of jurisdiction in California when Oregon university recruited California athlete in California, and medical malpractice in Oregon allegedly contributed to athlete's death].)[8]

Several federal court opinions also employ a "but for" test in this context. For example, the Ninth Circuit Court of Appeals found that a Florida cruise line's solicitation of business in Washington State was related sufficiently to an injury on board the cruise ship in international waters to warrant the exercise of jurisdiction in Washington, because in the absence of the solicitation the plaintiffs would not have taken the cruise and the injury would

---

[8]As will appear, we are not persuaded that the "but for" test provides an appropriate general standard, and consequently the reasoning of *Dialysis at Sea, supra*, 216 Cal.App.3d 788, and *State of Oregon* v. *Superior Court, supra*, 24 Cal.App.4th 1550, is disapproved to the extent it is inconsistent with this opinion.

not have occurred. (*Shute* v. *Carnival Cruise Lines* (9th Cir. 1990) 897 F.2d 377, revd. on other grounds *sub nom. Carnival Cruise Lines* v. *Shute, supra,* 499 U.S. 585.) The appeals court found jurisdiction although the cruise line had no offices or exclusive agents in Washington, and was not registered to do business there, but merely advertised in the local media, mailed brochures and paid commissions to travel agents there, and conducted promotional seminars in the state. Only about 1 percent of the cruise line's sales took place in Washington.

The Ninth Circuit Court of Appeals declared that a "but for" test is "consistent with the basic function of the 'arising out of' requirement—it preserves the essential distinction between general and specific jurisdiction," in that it "preserves the requirement that there be *some* nexus between the cause of action and the defendant's activities in the forum." (*Shute* v. *Carnival Cruise Lines, supra,* 897 F.2d at p. 385, italics added.) It rejected any narrower reading of the "arising out of" requirement as unnecessary to protect defendants from unreasonable assertions of jurisdiction, explaining that the third element of the specific jurisdiction analysis—that is, the reasonableness requirement—provides the necessary protection. (*Ibid.*) The court reasoned that any narrower application of the "arising out of" element would shield defendants who purposefully have availed themselves of forum benefits, and therefore would be "an unwarranted departure from the core concepts of 'fair play and substantial justice' which are central to the due process analysis" underlying the exercise of specific jurisdiction. (*Id.* at p. 386.)

Thereafter, in *Ballard* v. *Savage* (9th Cir. 1995) 65 F.3d 1495, 1500, the Ninth Circuit reaffirmed *Shute* v. *Carnival Cruise Lines, supra,* 897 F.2d 377, after the high court's reversal of the latter opinion on other grounds. (See *Carnival Cruise Lines* v. *Shute, supra,* 499 U.S. 585.) The Ninth Circuit found that a duped investor's fraud claim against an Austrian bank that was used as a repository for deposits in a Ponzi scheme was sufficiently related to the bank's general banking activities in the forum to warrant the exercise of specific jurisdiction, although the bank's general banking activities in the forum clearly did not cause the injury. The court found that the "but for" test was satisfied because, had the bank not done business in the United States, the creator of the Ponzi scheme would not have used it in connection with the fraudulent scheme. (*Ballard* v. *Savage, supra,* 65 F.3d at p. 1500; see also *Prejean* v. *Sonatrach, Inc.* (5th Cir. 1981) 652 F.2d 1260, 1270, fn. 21 ["Logically, there is no reason why a tort cannot grow out of a contractual contact. In a case like this, the contractual contact is a 'but for' causative factor for the tort since it brought the parties within tortious 'striking distance' of each other. While the relationship between a tort suit and

contractual contact is certainly more tenuous than when a tort suit arises from a tort contact, that only goes to whether the contact is by itself sufficient for due process, not whether the suit arises from the contact."].)

We are not persuaded it is productive to focus upon whether the injury would have occurred "but for" the forum contacts, at least when an ongoing franchise relationship is the forum contact. As applied in certain circumstances, this standard may be too lax and theoretically may include any historical cause of the plaintiff's injuries. For example, as Seabest notes, if the defendant is a lawyer who has received his or her legal education in the forum, that legal education may be said to be a "but for" cause of any malpractice the lawyer commits anywhere in the nation, yet it hardly seems a sufficient basis for the forum to exercise jurisdiction. One commentator has criticized the "but for" test as permitting a virtually unlimited exercise of jurisdiction. (Brilmayer, *Related Contacts and Personal Jurisdiction* (1988) 101 Harv. L.Rev. 1444, 1462 (*Related Contacts*); Brilmayer, *How Contacts Count, supra*, Sup. Ct. Rev. at p. 84.) As Professor Lea Brilmayer points out, one's birth is a historical "but for" cause of one's every action, yet the location of one's birth normally should not determine personal jurisdiction. (Brilmayer, *Related Contacts, supra*, 101 Harv. L.Rev. at p. 1462.)

Moreover, as another commentator has pointed out, the concept of "minimum contacts" is not compatible with the elements of causation—normally physical factors—that are involved in tort claims. Just as with the proximate cause test, "[a] further problem with the 'but for' causation is its mismatch with the social activities that are part of the causal chain in typical personal jurisdiction disputes. In tort causal chains, one usually encounters physical phenomena such as a speeding car, a careless shotgun blast, or a baby food spill on a supermarket floor. Conversely, contacts in personal jurisdiction cases are generally social acts, like advertising directed at forum residents. In the latter instance, the causal link between those acts and the injuries necessarily passes through some conscious decision on the plaintiff's part," thereby interrupting the causal chain, though not necessarily making the exercise of jurisdiction unreasonable. (Rose, *Related Contacts, supra*, 82 Cal.L.Rev. at pp. 1571-1572.) Further, even in the context of "but for" causation in the tort field, it generally has been accepted that the search for "but for" causation is not a meaningful one when two or more concurrent, independent causes exist, because the tortfeasor does not escape liability for his or her negligence on the ground that the same harm would have occurred without such negligence. (*Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1049 [1 Cal.Rptr.2d 913, 819 P.2d 872].) The same may be true in the context of jurisdiction, such that if a forum contact is but one of several concurrent, independent causes of plaintiff's injury, it nonetheless may be fair to permit the state to exercise jurisdiction over the defendant.

Significantly, the high court has not been concerned with causation in this context. Rather, it has spoken of a *relationship* between the cause of action and the contacts in the forum, and has used relatively broad terms to describe the necessary relationship. (See *International Shoe, supra,* 326 U.S. at p. 319 [90 L.Ed. at pp. 103-104]; see also *Burger King, supra,* 471 U.S. 462, 472 [85 L.Ed.2d 528, 540-541]; *Helicopteros, supra,* 466 U.S. at p. 414, fn. 9 [80 L.Ed.2d at p. 411].) In *International Shoe,* for example, the court found the defendant's sales activities within the state were such as to subject it to the forum's jurisdiction, without requiring proof that the sales activities caused the events underlying the claim within the state (a claim for unemployment insurance contribution for the sales representatives).[9] (*International Shoe, supra,* 326 U.S. 310.) In *Burger King,* too, as we have pointed out, the Michigan defendant's breach of contract was not *caused* by his contacts with the Florida corporation, even though the claim certainly arose out of the contract. (*Burger King, supra,* 471 U.S. 462.) And in *Cornelison,* we found a Nevada trucking company's history of contacts with California sufficient to establish jurisdiction, although these contacts did not literally *cause* the accident in Nevada that was the subject of the lawsuit. (*Cornelison, supra,* 16 Cal.3d 143.) The foregoing authorities call into question the utility of importing a causation test from tort law into the area of jurisdiction in order to evaluate a matter that fundamentally is one of relationship and fairness, rather than causation.

Again, beginning with *International Shoe, supra,* 326 U.S. 310, the high court has cautioned repeatedly that the question whether a nonresident defendant has sufficient contacts with the forum, so as to make fair the exercise of jurisdiction, cannot be answered by resort to mechanical tests. (*Id.* at p. 319 [90 L.Ed. at pp. 103-104]; see also *Burger King, supra,* 471 U.S. at p. 478 [85 L.Ed.2d at pp. 544-545]; *Kulko* v. *California Superior Court, supra,* 436 U.S. at pp. 91, 92 [56 L.Ed.2d at pp. 140-141]; *Shaffer* v. *Heitner, supra,* 433 U.S. 186, 204 [53 L.Ed.2d 683, 697-698].) We echoed this concern in *Cornelison, supra,* 16 Cal.3d 143, stating that specific jurisdiction does not turn upon any precise formula. (*Id.* at p. 150; see also *Edmunds* v. *Superior Court, supra,* 24 Cal.App.4th at pp. 230-231; *Pennsylvania Health & Life Ins. Guaranty Assn.* v. *Superior Court* (1994) 22 Cal.App.4th 477, 481 [27 Cal.Rptr.2d 507].) The question whether the facts are sufficient to justify the exercise of specific jurisdiction is answered fundamentally by considering the goal of fairness. A "but for" test is overly

---

[9] Although the court in *International Shoe, supra,* 326 U.S. 310, did not use the specific/ general jurisdiction nomenclature, the case has been understood as establishing the theoretical basis for specific jurisdiction. (Von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis* (1966) 79 Harv. L.Rev. 1121, 1141-1163; Rose, *Related Contacts, supra,* 82 Cal.L.Rev. at p. 1550.)

mechanical and fails to concentrate on the central issue presented by a motion to quash for lack of specific jurisdiction—that is, whether the defendant's forum contacts and the plaintiff's claim are related sufficiently so that it is *fair* to subject the defendant to jurisdiction in the forum.

Seabest urges alternatively that we declare that the relationship required between the forum contact and the plaintiff's claim must be direct and concrete. It appears Seabest would have us limit the forum to exercising jurisdiction over nonresident defendants for, in Seabest's words, "alleged wrongdoing that took place in the forum." Specifically, Seabest urges that we adopt the view championed by Professor Brilmayer, that specific jurisdiction is legitimate under recent high court authority only when a forum contact is *substantively related* to the plaintiff's cause of action—that is, when conduct constituting a forum contact that took place *in* the forum normally would be pleaded under state substantive law applicable to the plaintiff's cause of action. (See Brilmayer, *How Contacts Count, supra*, 1980 Sup. Ct. Rev. at p. 82; Brilmayer et al., *A General Look at General Jurisdiction* (1988) 66 Tex. L.Rev. 721, 738 (*General Jurisdiction*).) If a fact alleged to be a forum contact would be irrelevant in a domestic dispute, the argument continues, it is not a "related" contact merely because a nonresident defendant is involved. (*Ibid.*)

In support of this thesis, Professor Brilmayer asserts that the constitutional underpinning for specific jurisdiction is the state's sovereign power to regulate conduct *within* the state. (Brilmayer et al., *General Jurisdiction, supra*, 66 Tex. L.Rev. at pp. 739, 740; Brilmayer, *How Contacts Count, supra*, Sup. Ct. Rev. at pp. 85-86 [arguing that the concept of state sovereignty permits exercise of jurisdiction over nonresidents because of the "State's right to regulate activities occurring within the State"].) She explains: "A test of *substantive relevance* helps to identify those situations in which the state is using the litigation to regulate local activity. Conduct that has no legal relevance [to the claim] is unlikely to give rise to any plausible state interest in regulation. Consequently, if such legally irrelevant conduct is the only local contact, then a state cannot predicate jurisdiction upon any purported desire to regulate local activities." (Brilmayer et al., *supra*, 66 Tex. L.Rev at p. 740, italics added.)

Seabest argues that the "substantive relevance" standard now represents the majority view in the federal circuits. Our research, however, shows otherwise. In the First Circuit Court of Appeals, the court expressly has repudiated the claim that its earlier decisions adopted the substantive relevance doctrine as a matter of federal constitutional law. (*Ticketmaster-New York, Inc.* v. *Alioto* (1st Cir. 1994) 26 F.3d 201, 207, fn. 8.) While the cases

from the First Circuit Court of Appeals cited by Seabest express various standards,[10] we observe that in a case decided after those cited by Seabest, the First Circuit Court of Appeals has approved the exercise of jurisdiction when forum contacts were not substantively related to the plaintiff's claim. (*Nowak* v. *Tak How Investments, Ltd.* (1st Cir. 1996) 94 F.3d 708.) In that case, plaintiff's decedent drowned in a swimming pool in the defendant's Hong Kong hotel. The court determined that the Hong Kong hotel corporation's solicitation of the patronage of Massachusetts residents and its negotiations conducted by fax over the terms of a group rate contract established a sufficient relationship between the forum contacts and the plaintiff's claim to justify the exercise of specific jurisdiction in Massachusetts, although the plaintiff's injury occurred in Hong Kong. It appears evident as well that the solicitation was not substantively related to the plaintiff's claim. The court also observed that although it favors a proximate cause standard of relatedness, it also recognizes that such a test is unduly restrictive in some cases. (*Id.* at p. 715.) The court concluded that although jurisdiction necessarily is reasonable if premised upon a forum "contact that is a legal cause of the injury underlying the controversy—*i.e.*, that 'form[s] an "important or [at least] material, element of proof" in the plaintiff's case' [citation]"—jurisdiction nevertheless may be exercised appropriately in cases *not* meeting this standard. (*Ibid.*) The court declared: "If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage." (*Id.* at pp. 715-716; see also *Pritsker* v. *Yari* (1st Cir. 1994) 42 F.3d 53, 61 [relatedness element a "flexible, relaxed standard"]; *Ticketmaster-New York, Inc.* v. *Alioto, supra,* 26 F.3d 201, 205-206, 207, fn. 8 [indicating standard should be flexible].)

Seabest also cites cases from the Second, Fourth, Seventh, and Eighth Circuit Courts of Appeals in support of its position. (See, e.g., *Gelfand* v. *Tanner Motor Tours, Ltd.* (2d Cir. 1964) 339 F.2d 317, 321-322 [declining to exercise jurisdiction based upon in-state sale of bus tickets, because the alleged negligence took place entirely outside the forum]; *City of Virginia*

---

[10]See, e.g., *United Elec. Workers* v. *163 Pleasant Street Corp.* (1st Cir. 1992) 960 F.2d 1080, 1089 (forum contacts must be both cause in fact and legal cause of plaintiff's injury in order to support specific jurisdiction and "the defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case"); *Sawtelle* v. *Farrell* (1st Cir. 1995) 70 F.3d 1381, 1389-1390 (suggesting that in a tort claim, the contacts must constitute the negligent conduct that caused the plaintiff's injury); see also *Marino* v. *Hyatt Corp.* (1st Cir. 1986) 793 F.2d 427, 430 (no jurisdiction because in-state conduct "would hardly be an important, or perhaps even a material, element of proof" in the cause of action); but see *Fournier* v. *Best Western Treasure Island Resort* (1st Cir. 1992) 962 F.2d 126, 127, in which the court simply asks whether plaintiff's injuries "arise out of" defendant's in-state conduct.

*Beach* v. *Roanoke River Basin* (4th Cir. 1985) 776 F.2d 484, 487 [noting that "the activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim"]; *Saylor* v. *Dyniewski* (7th Cir. 1988) 836 F.2d 341, 343 [holding "the case law plainly establishes that claims can only 'arise from' transactions if some connection exists between the nature of the claim and the nature of the transaction," but specifically limiting this part of the holding to interpretation of Illinois's long-arm statute]; *Pearrow* v. *National Life & Acc. Ins. Co.* (8th Cir. 1983) 703 F.2d 1067, 1068-1069 [interpreting only Arkansas's long-arm statute, the defendant's out-of-state negligence did not "arise out of" the defendant's in-state solicitation].) Only the first two cases cited actually support Seabest's claim, the others being interpretations of state long-arm statutes. As our review demonstrates, these authorities do not demonstrate that Seabest's test represents any "majority view" among the federal circuits.

Neither is Seabest's reliance upon *Hanson* v. *Denckla, supra,* 357 U.S. 235, as an "illustration" of the substantive relevance test particularly enlightening. In *Hanson,* legatees sought to establish personal jurisdiction over a Delaware trustee in a Florida court. The trust had been created in Delaware, and the beneficiary thereafter moved to Florida and there exercised her powers of appointment. The argument in support of Florida's exercise of jurisdiction was that the trustee had established sufficient "affiliation" with Florida to justify jurisdiction. The high court rejected this argument, finding insufficient minimum contacts between the Delaware trustee and the state of Florida. It explained that the trustee had no office in Florida and neither transacted nor solicited business there, and that the trust assets never had been held or administered in Florida. (P. 251 [2 L.Ed.2d at p. 1296].) In addition, the court explained that "[t]he cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State." (*Ibid.*) Seabest seizes on this statement as an example of its "substantive relevance" test. Its reliance is misplaced. In making this statement, the court was concerned not with establishing a general rule of relatedness for the purpose of specific jurisdiction, but with distinguishing the case at bar from *McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220. In the latter case, the court held that a single forum contact in the form of an insurance contract could be the basis for jurisdiction, in light of the forum state's interest in providing effective redress when insurers that have solicited business in the state fail to pay claims. (*McGee* v. *International Life Ins. Co., supra,* 355 U.S. at p. 223 [2 L.Ed.2d at p. 226]; see also *Burger King, supra,* 471 U.S. at p. 475, fn. 18 [85 L.Ed.2d at p. 543].) In *Hanson,* by contrast, the court stated that the contract that was the subject of the litigation had no connection with the forum state and therefore *could not count as a forum "contact"* on the part of the trustee. (*Hanson* v. *Denckla, supra,* 357 U.S. at p. 252 [2 L.Ed.2d at p. 1297].)

Consequently, the court reasoned, "this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendant [trustee] exercised in Florida." (*Hanson* v. *Denckla, supra,* 357 U.S. at p. 252 [2 L.Ed.2d at p. 1297].) This language does not suggest that specific jurisdiction is legitimate only when a forum contact is substantively related to the plaintiff's cause of action—that is, when conduct constituting a forum contact normally would be pleaded under state substantive law applicable to the plaintiff's cause of action. Although the court in *Hanson* certainly found that when no relationship exists between the subject of the litigation and the forum, and there are no other contacts between the defendant and the forum, the exercise of jurisdiction is inappropriate, the court was not presented with the different question of how connected a cause of action must be to forum contacts in order to establish specific jurisdiction.[11]

Seabest also urges the following policy rationales in support of the substantive relevance standard. It contends the test would prevent the assertion of jurisdiction based upon attenuated contacts that have no direct relationship to a lawsuit. We are not persuaded. Existing law regarding specific jurisdiction, with its emphasis upon "purposeful availment," already prohibits the exercise of jurisdiction on the basis of attenuated contacts. The assertion that the standard should ensure a direct relationship between the contacts and the lawsuit is simply another way of stating the standard promoted by Seabest, but does not advance a supporting argument.

Seabest also argues that the policy of long-arm statutes (and, presumably, the due process clause) is to permit states to regulate activities that take place within their borders, and that its proposed rule comports with this asserted policy. According to Seabest, the interest of the state in regulating activity within its borders is implicated only when the plaintiff seeks to impose liability for some act that the defendant actually committed in the forum state. This rationale is stated more fully in the works of Professor Brilmayer, cited above.

We reject this argument, however, because in our view it fails to acknowledge another interest of the state that is recognized as an incident of state sovereignty. Specifically, not only does the state have the power as sovereign to regulate conduct through the application of its substantive law, but

[11]Seabest's reliance upon *Farris* v. *Capt. J. B. Fronapfel Co.* (1986) 182 Cal.App.3d 982 [227 Cal.Rptr. 619], in support of the substantive relevance test, also is unpersuasive. In that case, the Court of Appeal found no contacts between the defendant (a Florida ship inspector) and California, and no relationship between the plaintiff's fraud claim and this state. The court did not suggest that, even if the defendant purposefully had availed himself of benefits in California, jurisdiction over him would be improper unless the lawsuit alleged that defendant's in-forum contacts were substantively related to the claim.

the state additionally has an interest in providing a judicial forum for its residents—so long as the goal of fairness to defendants also is observed. As the high court stated in *Burger King, supra*, 471 U.S. 462, explaining why a state legitimately may exercise specific jurisdiction: "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (*Id.* at p. 473 [85 L.Ed.2d at p. 541], citing *McGee* v. *International Life Ins. Co., supra*, 355 U.S. at pp. 222-223 [2 L.Ed.2d at pp. 225-226]; see also *id.* at pp. 223-224 [2 L.Ed.2d at pp. 226-227]; and *Keeton* v. *Hustler Magazine, Inc., supra*, 465 U.S. at p. 776 [79 L.Ed.2d at pp. 798-799]; see also *Rush* v. *Savchuk* (1980) 444 U.S. 320, 329, 323 [62 L.Ed.2d 516, 525-526, 522, 100 S.Ct. 571] [acknowledging state's interest in providing forum to resident, but holding such interest insufficient to justify jurisdiction when cause of action arose outside forum and the defendant's single forum contact would not render foreseeable the possibility of jurisdiction in that forum]; *Dunne* v. *State of Florida* (1992) 6 Cal.App.4th 1340, 1346 [8 Cal.Rptr.2d 483].) This interest cannot be satisfied consistently with fairness to the defendant when the defendant has no minimum contacts with the state—but when the defendant does have such contacts with the state, it can be satisfied.

In short, the theoretical basis proffered for the substantive relevance standard is unpersuasive. The high court never has indicated that the state's sovereign power to regulate conduct within its borders is the sole justification for a state's exercise of specific jurisdiction. Rather, it has treated the question whether the state may assert power to regulate conduct in a particular case through its substantive law as distinct from the question whether minimum contacts have been established for the purpose of the state court's assertion of jurisdiction. (See *Keeton* v. *Hustler Magazine, Inc., supra*, 465 U.S. at p. 778 [79 L.Ed.2d at pp. 799-800]; see also *Kulko* v. *Superior Court, supra*, 436 U.S. at p. 98 [56 L.Ed.2d at p. 145]; *Shaffer* v. *Heitner, supra*, 433 U.S. at p. 215 [53 L.Ed.2d at pp. 704-705]; Twitchell, *The Myth of General Jurisdiction* (1988) 101 Harv. L.Rev. 610, 654-655; Korn, *The Choice-of-Law Revolution: A Critique* (1983) 83 Colum. L.Rev. 772, 786-787.) Indeed, the high court has made it clear that a state's jurisdiction to provide a forum is *not limited* to claims that involve conduct that took place within the state's borders. (*Burger King, supra*, 471 U.S. at p. 476 [85 L.Ed.2d at p. 543]; see 1 Casad, Jurisdiction in Civil Actions, *supra*, § 2.05, p. 2-99.) Rather, as noted, the state has a legitimate interest as sovereign in providing its residents with protection from injuries caused by nonresidents and with a forum in which to seek redress. This assertion of sovereignty with respect to nonresident defendants is fair when those defendants have availed themselves of certain benefits within the state and the claim is related to those contacts. The relatedness requirement is imposed in

order to ensure fairness to defendants who have relatively attenuated con-tacts with the state, and not to reflect that the state's sovereign power is limited to adjudicating claims that arise within its borders.

Especially inappropriate is Seabest's suggestion that the state may not provide a forum in a case in which the nonresident has taken advantage of the state's market or laws and in the process injured a forum resident. As already pointed out in connection with the proximate cause test applied by the Court of Appeal, a restrictive test of relatedness is inconsistent with the fairness rationale that informs the specific jurisdiction analysis. That is, a person who purposefully takes advantage of the benefits of doing business in the forum state fairly can be required to answer lawsuits that relate to his or her activities there (*Burger King, supra,* 471 U.S. at p. 472 [85 L.Ed.2d at pp. 540-541]); such an exercise of jurisdiction does not offend " 'traditional notions of fair play and substantial justice.' " (*International Shoe, supra,* 326 U.S. at p. 316 [90 L.Ed. at p. 102].) As the high court has admonished: "[T]o the extent that a [defendant] exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the [defendant] to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." (*Id.* at p. 319 [90 L.Ed. at p. 104].) The substantive relevance test would make jurisdiction turn upon pleading requirements under state substantive law, a focus that falls far from the real issue of evaluating jurisdiction in terms of fundamental fairness.

We also note that the substantive relevance test proposed by Seabest would have produced a different outcome in *Cornelison, supra,* 16 Cal.3d 143. In that case, the defendant's forum activities (making deliveries in California) presumably would not have been relevant in the wrongful death action based upon a claim that the defendant negligently drove his truck, thereby causing the accident in Nevada. Nonetheless, we were of the view that California could, consistently with "fair play and substantial justice," exercise specific jurisdiction over the defendant.

Seabest argues finally that the substantive relevance test provides a bright line rule and affords the simplest guideline for courts to follow. Academic commentators have noted the same attraction in this test. (See *Note, supra,* 50 Wash. & Lee L.Rev. at p. 1290; Rose, *Related Contacts, supra,* 82 Cal.L.Rev. at p. 1579; Twitchell, *The Myth of General Jurisdiction, supra,* 101 Harv. L.Rev. at p. 653.) Simple rules, however, are not always correct rules. A rule that essentially limits the jurisdiction of a forum to acts

occurring within its boundaries may be easy to apply, but it is overly mechanical and is inconsistent with the thrust of recent high court opinions. It is inconsistent not only with express language in *Burger King, supra,* 471 U.S. 462, acknowledging the power of the state to exercise jurisdiction over out-of-state conduct that injures a forum resident, but also is inconsistent with the direction followed by the court ever since it explained in *International Shoe, supra,* 326 U.S. 310, that "the criteria by which we mark the boundary line between those activities which justify the subjection of a [defendant] to suit, and those which do not, cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (*Id.* at p. 319 [90 L.Ed.at pp. 103-104].) In *World-Wide Volkswagen, supra,* 444 U.S. 286, and *Asahi Metal Industry Co.* v. *Superior Court, supra,* 480 U.S. 102, for example, involving negligently designed products placed in the stream of commerce at the forum, the proposed test easily would have produced a holding that, because any negligence or design defect occurred outside the forum and no forum contact would have been pleaded in a domestic complaint raising the same claim, the forum could not exercise jurisdiction over the defendant manufacturers or distributors. Yet the United States Supreme Court instead undertook the traditional three-part analysis of jurisdiction outlined in its earlier cases. There is no indication the substantive relevance test would find favor in the high court.

In the context of ongoing franchise relationships, we have rejected the proximate cause test as too narrow, and the "but for" test as too broad and amorphous. Finally, we conclude that the substantive relevance test is inappropriate, based as it is upon an overly restrictive view of the interest of the state in providing a judicial forum and redress to its residents. In sum, one must question the utility of importing a causation test from tort law to measure a matter that is fundamentally one of relationship and fairness rather than causation, keeping in mind that mechanical tests are inconsistent with a court's basic task of determining whether the exercise of personal jurisdiction would comport with " 'fair play and substantial justice.' " (*Burger King, supra,* 471 U.S. at p. 486 [85 L.Ed.2d at p. 549].) As the high court explained: "This approach does, of course, preclude clear-cut jurisdictional rules. But any inquiry into 'fair play and substantial justice' necessarily requires determinations 'in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable." ' " (*Id.* at p. 486, fn. 29 [85 L.Ed.2d at p. 549].)

## D

Having determined that defendants did establish minimum contacts with California, we finally must consider whether the assertion of

specific jurisdiction is fair. (*Burger King, supra,* 471 U.S. at p. 476 [85 L.Ed.2d at p. 543].) In this connection, a court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" (*Asahi Metal Industry Co.* v. *Superior Court, supra,* 480 U.S. at p. 113 [94 L.Ed. at p. 105]; see also *Burger King, supra,* 471 U.S. at p. 477 [85 L.Ed.2d at pp. 543-544].) Because we conclude defendants had the requisite minimum contacts with California, the burden is now on them to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (*Burger King, supra,* 471 U.S. at p. 477 [85 L.Ed.2d at p. 544].)

The Court of Appeal did not reach this part of the analysis, having concluded the claim lacked a sufficient relationship to the cross-defendants' California contacts. Because we are as equipped as the Court of Appeal to analyze this point, we decide it here rather than remanding the matter to the intermediate court.

WRMI asks us to consider that it had "virtually no contact" with California, that all the conduct that is the basis for Vons's claim occurred in Washington, that witnesses from Washington (mostly young persons formerly employed in its restaurants) would be forced to travel to California, and that WRMI is a small corporation that would be unduly burdened by being forced to defend itself in an extensive multiparty lawsuit far from home. WRMI also points out that it would be at a disadvantage at this point in time, because the litigation has continued during review of the order on its motion to quash.

Seabest asks that we consider the allegedly tenuous and minimal nature of its contacts with California and the irrelevance of those contacts to Vons's claims against Seabest, the availability of the Washington forum to adjudicate not only Vons's cross-complaint, but the entire action, and the circumstance that a majority of the evidence relevant to Vons's claim will be in Washington. Seabest also urges that because it has no corporate presence in California, an undue burden would be imposed were it required to litigate in this state. It claims that Washington law should be applied, because Vons's claim turns on assertions that Seabest's cooking practices violated Washington law. Seabest also notes that some cases consider the extent to which the plaintiff's choice of forum appears to be the result of forum shopping, and suggests that Vons may have chosen the California forum in order to secure

punitive damages that would be unavailable under Washington law. Seabest would discount California's interest in providing a forum for its residents, because Vons is a sophisticated litigant that can secure relief in any forum. Finally, Seabest argues California has no interest in regulating the conduct involved in the litigation, because all of the relevant conduct took place outside its borders.

We have concluded that Seabest and WRMI had significant contacts with California through their ongoing business relationship with Foodmaker, and that the litigation bears a substantial connection to that forum relationship. We are not persuaded it would be unfair to subject Seabest and WRMI to the jurisdiction of the California courts.

As the high court has explained, "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the . . . defendant." (*Asahi Metal Industry Co.* v. *Superior Court, supra*, 480 U.S. at p. 114 [94 L.Ed.2d at pp. 105-106].) Vons is a corporation, with headquarters in California, that not only alleged injury arising from Seabest's and WRMI's conduct, but that has been sued in the California forum in complex multiparty litigation as to which Seabest and WRMI may have a degree of concurrent liability. California has an obvious and direct interest in protecting Vons from injury and providing it with a forum in which its claims for relief may be adjudicated, enabling it to obtain the relief to which it is entitled. Moreover, considerations of judicial efficiency overwhelmingly favor litigation of all claims in a single forum. Because California already has invested judicial resources in this litigation apart from its substantive interest in the claims, the additional interest of efficiency favors this state's exercise of jurisdiction. Finally, although the burdens on defendants are not inconsiderable, they are not such "as to make litigation 'so gravely difficult and inconvenient' " that Seabest and WRMI would be at a " 'severe disadvantage' " (*Burger King, supra*, 471 U.S. at p. 478 [85 L.Ed.2d at p. 544]) in comparison to Vons, not the least because Foodmaker's agreement to provide a defense and indemnify Seabest and WRMI substantially mitigates those burdens.

With respect to Seabest's arguments regarding the substantive law to be applied, the United States Supreme Court has explained that such concerns "usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the 'fundamental substantive social policies' of another State may be accommodated through application of the forum's choice-of-law rules." (*Burger King, supra*, 471 U.S. at p. 477 [85 L.Ed.2d at p. 544], fn. omitted.) And, as

in *Burger King*, where the defendant claimed Michigan's franchise laws governed many aspects of the franchise relationship, the acknowledged interest of Washington in applying its own law does not render California's interest null, or—more importantly—unconstitutional. (*Id.* at p. 483 [85 L.Ed.2d at pp. 547-548].) As for the claimed disparity in economic power and sophistication between Seabest and WRMI on the one hand, and Vons on the other, to the extent such a disparity is relevant, whatever disparity exists is mitigated, again, by Foodmaker's agreement to provide a defense to the extent one is not provided by Seabest's and WRMI's insurers.

For the reasons set forth above, we conclude Seabest and WRMI have failed to demonstrate that exercise of jurisdiction by the California courts in this matter would be fundamentally unfair.

### III

The judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings not inconsistent with this opinion.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Appellant's petition for a rehearing was denied February 5, 1997.