[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
CT Page 15251
 Facts and Procedural Background
The plaintiff, CHR International, Inc., is a corporation with a principal place of business in Orange, California. The defendant, HRF Fastener Systems, Inc. is a Connecticut corporation located in Farmington, Connecticut. The defendant has no office or place of business in California, has no employees in California, owns no property in California and does not advertise or otherwise solicit business in California.
The plaintiff sold certain merchandise to the defendant. That merchandise was intended for use in South Carolina and the contract provided "all shipments of spade-bit blanks were to be made from CHR's factories in Taiwan to Boston, Massachusetts."
The plaintiff brought suit against the defendant in December of 1996 in the California Superior Court for Orange County. The plaintiff received a judgment in the amount of $35,341.10. That judgment was entered because of the defendant's failure to appear and defend.
The plaintiff commenced this action in an effort to domesticate the California judgment.
The defendant has moved to dismiss this action claiming that the California judgment was rendered by default and without personal jurisdiction so as not to be entitled to full faith and credit in Connecticut.
 Discussion
Although the full faith and credit clause of the United States Constitution requires one state to uphold the judgment of another state's courts where such judgment has been properly granted, the other state court's lack of jurisdiction renders such a foreign judgment void. Underwriter's National AssuranceCompany v. North Carolina Life and Accident and Health InsuranceGuarantee Association, 455 U.S. 691, 704, 705, 102 S.Ct. 1357,716 L.Ed.2d 658 (1982). The Connecticut Supreme Court has held:
 "A party can therefore defend against the enforcement of a foreign judgment on the ground that the court that rendered the judgment lacked personal jurisdiction, unless the CT Page 15252 jurisdiction issue was fully litigated before the rendering court or the defendant party waived the right to litigate the issue." [Citations omitted]. Packer Plastics, Inc. v. Laundon, 214 Conn. 52, 56 (1990).
The starting place for evaluating constitutional limitations on judgments against foreign corporations obtained by long-arm statutes is the often quoted United States Supreme Court decision in International Shoe Company v. Washington, 326 U.S. 310,66 S.Ct. 154, 90 L.Ed. 95 (1945).
The Connecticut Supreme Court has held that the law of the foreign state determines the issues regarding the jurisdiction of a foreign court. Smith v. Smith, 174 Conn. 434, 438 (1978).
The California long-arm statute is contained in Cal. Civil Procedure Code Section 410.10 (1999) and reads as follows:
 "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."
The California Supreme Court has held that its long-arm statute is intended to extend jurisdiction to the full limits allowed by the United States Constitution. Vons Companies, Inc.v. Seabest Foods, Inc., 14 Cal.4th 434, 444-445, 926 P. 2nd 1085, Cert. denied, ___ U.S. ___, 118 S.Ct. 417, 139 L.Ed.2d 13
(1997).
The Supreme Court of California has issued an exhaustive opinion on the question of minimum contacts and its long-arm statute in Vons Companies, Inc., supra.
In Vons, the California court wrote as follows:
 "Personal jurisdiction may be either general or specific. A non-resident defendant may be subject to the general jurisdiction of the forum if his or her contacts in the forum state are `substantial . . . continuous and systematic.' [Citations omitted]. In such a case `it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum'. [Citations omitted]. Such a defendant's contacts with the forum are so wide ranging that they may take the place of physical presence in the forum as a basis for jurisdiction." CT Page 15253 Vons, supra at P.2d 1091.
In addition to the general jurisdiction noted above, the Vons
court also recognizes what it refers to as "specific jurisdiction". The court wrote:
 "If the non-resident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she may be subject to the specific jurisdiction of the forum, if the defendant has purposely availed himself or herself of forum benefits, [citation omitted] and the `controversy is related to or arises out of a defendant's contact with the forum'. [Citation omitted]. It is this type of personal jurisdiction that Vons seeks to establish in this case." Vons, supra at P.2d 1091, 1092.
In Vons, the California courts reviewed the exercise of personal jurisdiction over the owners of "fast food" restaurant franchises located in another state in litigation stemming from several incidents of food poisoning that occurred in the foreign jurisdiction. In 1993, customers of the Jack-in-the-Box restaurants in several states including Washington, suffered from exposure to E. coli bacteria traced to hamburgers sold at the restaurants. Foodmakers, Inc., of which Jack-in-the-Box is a division, is a Delaware corporation with a principal place of business in San Diego, California. It blamed the E. coli contamination on its meat suppliers including Vons Company, Inc. Vons Company, Inc. processed the hamburg patties in its El Monte, California plant and shipped them to Foodmakers for use in Jack-in-the-Box restaurants outside of California. Eighty-five Jack-in-the-Box franchises from California and other states whose customers had been injured sued Foodmakers, Vons and other meat processors in an action brought in a San Diego county superior court. Foodmakers' cross-complaint against Vons and other meat suppliers. Vons then filed a cross-complaint against Foodmakers, several meat packers and several Jack-in-the-Box franchises including Washington Restaurant Management, Inc. Washington Restaurant Management was a franchise of Foodmakers and owned no restaurants in California, but many in Washington. Washington Restaurant Management appeared specially and moved to quash service of process on the grounds of lack of personal jurisdiction.
The California court wrote: CT Page 15254
 "As we have explained, the cross defendants here, like the defendants in Burger King, [Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174 (1985)] purposely availed themselves of the benefits in the forum by reaching out to forum residents to create an ongoing franchise relationship. " Vons, supra, P.2d at 1093.
Washington Restaurant Management, Inc., and a second Washington corporation, Seabest, were each Washington corporations doing business in Washington. All of the locations involved in the franchise agreement were located in Washington. The individual franchisees served as corporate directors of Seabest and WRMI and it does not appear there were any shareholders other than the individual franchisees.
In Vons the cross-complaint defendant franchisees were being sued in California for doing business in Washington as Washington Corporations for food poisoning that occurred in the State of Washington. Nevertheless, because the Washington franchisees had accepted franchises from Foodmakers, Inc., a Delaware corporation based in California, the Washington franchisees had purposely availed themselves of the privilege of conducting activities within the State of California and had clear notice that they were subject to suit in California.
In the case before the court, an affidavit of Rory Gilham, a Vice President of CHR International, contains the following information:
 "5. Major elements of our contract administration took place in California. Specifically from its California offices, CHR
 (a) arranged for the production, shipment and delivery of the goods to the defendant in Boston, Massachusetts;
(b) handled all billings for the orders;
 (c) corresponded with the defendant regarding its orders; and
 (d) handled all other aspects of contract administration.
CT Page 15255
 6. In addition, while the goods were manufactured by CHR's supplier in Taiwan, ROC., CHR personnel based in California oversaw the production process."
The invoices for the fasteners are on a letterhead which reads as follows:
 "CHR International, Inc. 600 W. Freedom Avenue Orange, CA 92665 Tel: (714) 921-8700 Fax: (714) 921-8980."
The Court finds that by choosing to do business with CHR International through its California office, the defendant's contacts with the State of California are at least as great as the contacts of the Washington Jack-in-the-Box franchisees involved in Vons. While the defendant may have lacked sufficient systematic contacts in California to establish general jurisdiction, this controversy is related to or arises out of the defendant's contractual contacts with the forum. The defendant purposely directed its activities to a corporation resident in California.
"Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." Burger King, supra,471 U.S. at 473. The Court finds that California non-resident HRF Fasteners, having availed itself of forum benefits, is subject to the specific jurisdiction of California.
The motion to dismiss is denied.
The Court
Kevin E. Booth, J.