Filed 8/13/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DUNEX, INC. et al., | D061579 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00061745-CU-EI-NC) |
| CITY OF OCEANSIDE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge. Reversed.

Richards, Watson & Gershon, Rochelle Browne, Ginetta L. Giovinco; John P. Mullen, City Attorney, and Barbara L. Hamilton, Assistant City Attorney, for Defendant and Appellant.

Hart, King & Coldren, Robert S. Coldren and Mark D. Alpert for Plaintiffs and Respondents.

In this case, a municipality denied an application for a tentative subdivision map and coastal development permit which would convert the applicant's mobilehome park

from a rental subdivision to one in which individual residents owned the spaces where their respective mobilehomes were located. The municipality denied the application on multiple grounds, including its finding that the application did not comply with the municipality's local coastal program (LCP) and a separate finding that the application was not a bona fide attempt to convert the park to individual ownership but was instead an attempt to avoid the impact of local rent control ordinances.

The applicant challenged the denial of its application by way of a petition for a writ of administrative mandate, which the trial court granted. The trial court found the municipality had no power to deny the application on the grounds it was inconsistent with policies embodied in the municipality's LCP. The trial court also found the record did not support the municipality's finding that the application was an attempt to avoid the impact of its rent control ordinances.

In light of the Supreme Court's opinion in *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 807-808 (*Pacific Palisades*), which was filed after the trial court's judgment in this case was entered, we must reject the trial court's determination that the municipality had no power to deny the application on the grounds it was inconsistent with its LCP. In *Pacific Palisades*, our Supreme Court held that Government Code section 66427.5 et seq., which permits conversion of rental mobilehome parks to individual ownership, does not relieve the owner of a mobilehome park from its obligation to comply with the separate provisions of the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.; hereafter Coastal Act) and the Mello

2

Act (Gov. Code, §§ 65590, 65590.1).[1]  The court further held that a mobilehome park

conversion is a project within the meaning of the Coastal Act and that a conversion

applicant must obtain a coastal development permit, which a municipality may deny if

the proposed conversion is inconsistent with an adopted LCP.  Here, the record supports

the municipality's determination that, because the applicant's mobilehome park is in a

flood zone within the coastal zone, conversion is inconsistent with its adopted LCP,

which seeks to limit risk to lives and property in such areas.

Because the conversion was inconsistent with the municipality's LCP, the

municipality lawfully denied the conversion application.  Accordingly, we reverse the

judgment of the trial court and direct that it enter a judgment denying the applicant's

petition.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Application*

Plaintiffs and respondents Dunex, Inc. and Cavalier Mobile Estates (collectively

Dunex) own a mobilehome park, which they operate on a rental basis.  The mobilehome

park is located within the City of Oceanside (the city), defendant and appellant herein.

In August of 2009, Dunex filed an application with the city under section 66427.5

for a tentative subdivision map converting its mobilehome park to individual lots that

residents could purchase from Dunex.  The application was filed after Dunex had

unsuccessfully attempted to obtain a rent increase under provisions of the city's

---

[1]     All further statutory references are to the Government Code unless otherwise
indicated.

mobilehome rent control ordinance.

As part of its application, and as required by section 66427.5, subdivision (d), Dunex submitted a survey of tenant support for the proposed conversion. The occupants of 166 of 339 spaces at the park responded to the survey. Of those that responded, 20 indicated support for the conversion, 14 declined to state an opinion, and 132 opposed the conversion. Because a portion of its mobilehome park is within the coastal zone and subject to the Coastal Act, along with its application for a tentative subdivision map, Dunex also filed an application for a coastal development permit.

After Dunex filed its application, Dunex and city planners engaged in a great deal of correspondence and disagreement with respect to what was required to complete a conversion application. In particular, although city planners believed the application was subject to the California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq., Dunex argued that because it did not propose any physical change to any structure in the mobilehome park, its application was not a project within the meaning of CEQA. Alternatively, Dunex argued that the application fell within specific CEQA exemptions. Accordingly, Dunex declined to provide the city with information the city requested in order to prepare an initial evaluation of the conversion's likely environmental impact.

Notwithstanding its request for environmental information, city staff later determined it could process Dunex's application under a CEQA exemption for project applications that are to be denied. Thus, on February 25, 2010, the city determined

4

Dunex's application was complete.

B. *Denial*

The city's planning commission held a hearing on Dunex's application on May 24, 2010. The planning commission adopted the recommendation of city planners that Dunex's applications for a tentative map and a coastal development permit be denied. The planning commission found conversion was inconsistent with the LCP the city had adopted because it would not minimize development in a flood zone. The planning commission also found that in light of the lack of support for the conversion disclosed in the tenant survey, the fact the application was filed shortly after Dunex unsuccessfully attempted to raise rents at the park and statements Dunex representatives made at the time its request for a rent increase was denied, the application was not a bona fide attempt to convert the park to individual ownership but was instead an attempt to circumvent the city's rent control ordinance.

Dunex filed an appeal with the city council, and its appeal was heard on August 25, 2010. The city council also denied Dunex's applications for a tentative subdivision map and a coastal development permit. The council found that: (1) the proposed subdivision was inconsistent with the city's LCP because it would create residential lots in a flood zone; (2) the proposed subdivision was a sham conversion because the tenant survey showed that only 5 percent of tenants supported it and because the conversion application was made shortly after Dunex's application for relief from the city's rent control ordinance was denied and one of its representatives stated that if its request was

denied it would apply to convert the mobilehome park to individual ownership; and (3) Dunex did not provide information necessary to determine whether low-cost and moderate-cost housing would have to be replaced under the provisions of the Mello Act.

C. *Trial Court Proceedings*

Dunex filed a timely petition for writs of ordinary mandate and administrative mandate. The petition included constitutional claims that were later dismissed by stipulation and without prejudice. The trial court denied Dunex's request for ordinary mandate but granted its request for administrative mandate.

The trial court found that the city had no power to deny the tentative subdivision map for failure to comply with the LCP. In addition, the trial court found that, in any event, the conversion would not increase the flood risk for residents because it would not involve any new construction or development.

The trial court found that the record did not support the city council's finding that the conversion was a sham. In particular, the trial court found that the tenant survey, Dunex's earlier attempt to obtain a rent increase, and statements its representatives made at that time, did not establish that its application to convert the mobilehome park to individual ownership was an attempt to avoid the city's rent control ordinance.

Finally, the trial court found that the city could not rely on the absence of information about low-cost and moderate-cost housing because it had never requested information from Dunex with respect to the Mello Act.

In light of its findings, the trial court issued a writ which commanded that the city

6

conduct another hearing on Dunex's application and that the hearing be limited to consideration of the matters set forth in section 66427.5. The writ further prevented the city from considering the absence of tenant support, Dunex's prior requests for a rent increase, or statements its representatives made.

The city filed a timely notice of appeal.

## DISCUSSION

## I

After the trial court issued its writ, the Supreme Court filed its opinion in *Pacific Palisades*, *supra*, 55 Cal.4th 783. As we have indicated, we believe *Pacific Palisades* compels us to reverse the trial court's judgment granting mandamus relief to Dunex.

### A. *Pacific Palisades*

In *Pacific Palisades*, as here, the owner of a mobilehome park applied to a municipality for permission to convert the park from tenant occupancy to resident ownership. The municipality refused to accept the application because the owner failed to include applications for a coastal development permit or for approval under the Mello Act. The owner challenged the city's rejection of its application by way of a petition for a writ of mandate and a complaint for injunctive and declaratory relief. The owner argued the conversion was not a development subject to the Coastal Act and that, in any event, application of the Coastal Act was barred by the more specific provisions of section 66427.5, which set forth substantive and procedural requirements for obtaining subdivision map approval of mobilehome park conversions. The trial court agreed with

7

the owner and issued a writ of mandamus commanding the municipality to deem the owner's application complete.

The Court of Appeal reversed, concluding that the policy considerations embodied in the Coastal Act and the Mello Act are more extensive than those set forth in section 66427.5 and do not prevent a municipality from imposing conditions and requirements mandated by those acts on a mobilehome converter. On review, the Supreme Court affirmed the judgment of the Court of Appeal.

With respect to the Coastal Act, the Supreme Court noted: "The Coastal Act expressly recognizes the need to 'rely heavily' on local government '[t]o achieve maximum responsiveness to local conditions, accountability, and public accessibility . . . .' [Citation.] As relevant here, it requires local governments to develop local coastal programs, comprised of a land use plan and a set of implementing ordinances designed to promote the act's objectives of protecting the coastline and its resources and of maximizing public access. [Citations.] Once the California Coastal Commission certifies a local government's program, and all implementing actions become effective, the commission delegates authority over coastal development permits to the local government. [Citations.] Moreover, '[p]rior to certification of its local coastal program, a local government may, with respect to any development within its area of jurisdiction . . . , establish procedures for the filing, processing, review, modification, approval, or denial of a coastal development permit.' [Citation.] An action taken under a locally issued permit is appealable to the commission. [Citation.] Thus, '[u]nder the

8

Coastal Act's legislative scheme, . . . the [LCP] and the development permits issued by local agencies pursuant to the Coastal Act are not solely a matter of local law, but embody state policy.' [Citation.] 'In fact, a fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government.' [Citation.]" (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 794.)

In addition to recognizing the significant role local agencies play in enforcing Coastal Act policies, the Supreme Court determined that, notwithstanding the owner's argument to the contrary, a mobilehome park conversion is a "development" subject to the requirements of the Coastal Act. "An expansive interpretation of 'development' is consistent with the mandate that the Coastal Act is to be 'liberally construed to accomplish its purposes and objectives.' [Citation.] It thus has been held that 'development' is not restricted to physical alteration of the land. (*DeCicco v. California Coastal Com.* (2011) 199 Cal.App.4th 947, 951 [Rejecting a claim that a subdivision is not a land use and explaining, '[a]lthough a subdivision may not be a use of land, it is quite clearly a "development" within the meaning of the Coastal Act. [Public Resources Code s]ection 30106 expressly defines "development" to include "subdivision."'].) Similarly, it has been recognized that the Coastal Act's definition of 'development' goes beyond 'what is commonly regarded as a development of real property' [citation] and is not restricted to activities that physically alter the land or water [citation]." (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 796.)

The Supreme Court also expressly rejected the notion that an owner could avoid

9

the Coastal Act on the grounds its proposed conversion will have no impact on density or intensity of use: "In the first place, that a conversion might not immediately alter use of land does not preclude the possibility it will lead to an increase in the density or intensity of use. Additionally, a conversion might lead to problematic design features as owners express their individuality by decorating or adding to their mobilehomes. Nor is it impossible that owners would block public access to coastal areas or increase the number of residents in their units." (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 797.)

The Supreme Court found that conversions were also covered by the Mello Act. By way of the housing elements law (§§ 65580–65589.8), the Legislature required that each local government adopt, as a component of its general plan, a "housing element," which "shall make adequate provision for the existing and projected needs of all economic segments of the community" (§ 65583). The Supreme Court found: "The Mello Act supplements the housing elements law, establishing minimum requirements for housing within the coastal zone for persons and families of low or moderate income. [Citations.] It does not require local governments to adopt individual ordinances or programs to ensure compliance with its provisions [citation], but it prohibits local governments from authorizing '[t]he conversion or demolition of existing residential dwelling units occupied by persons and families of low or moderate income, . . . unless provision has been made for the replacement of those dwelling units with units for persons and families of low or moderate income.' [Citations.]

"The Mello Act expressly applies to most conversions of residential units within

10

the coastal zone, and also expressly applies to the conversion of a mobilehome or mobilehome lot to a condominium, cooperative, or similar form of ownership." (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 798.)

Finally, the Supreme Court considered the owner's argument that, notwithstanding the broad scope of the Coastal Act and the Mello Act, section 66427.5 exempts mobilehome conversions from compliance with the requirements of any state law other than those imposed by section 66427.5 itself.[2] The owner relied upon section 66427.5, subdivision (e) which provides that in considering an application for a mobilehome park subdivision map conversion, local governing bodies are limited to "the issue of compliance with this section."

After considering the express terms of section 66427.5 and its legislative history, the Supreme Court found that nothing in its provisions relieved local governments of their obligation to enforce the Coastal Act and the Mello Act when considering a mobilehome park conversion. "Significant state policies favor an interpretation of Government Code section 66427.5 that does not deprive the Coastal Act and the Mello Act of jurisdiction over land use within the coastal zone. As we observed earlier, the Coastal Act specifically recites that 'existing developed uses, and future developments

---

[2]     Section 66427.5 sets forth specific procedures and substantive requirements for approval of subdivision map applications which convert mobilehome parks to individual ownership. Section 66427.5, subdivision (a) provides protections to existing tenants in the form of requiring that they be given the option of purchasing their respective units or continuing their tenancy, subject to rent limitations set forth in section 66427.5, subdivision (f). As we have noted, section 66427.5, subdivision (d) requires that the owner provide the local government with a survey of tenant support for the conversion.

that are carefully planned and developed consistent with the policies of [the act] are essential to the economic and social well-being of the people of this state . . . .' [Citation.] Moreover, as the Court of Appeal recognized, the Coastal Act explains that the 'permanent protection of the state's natural and scenic resources is a *paramount* concern to present and future residents of the state and nation.' [Citation.] The housing elements law, which the Mello Act supplements, similarly responds to a concern 'of vital statewide importance.' [Citation]." (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 803.)

Thus, the Supreme Court concluded "that Government Code section 66427.5, which states a uniform, statewide procedure for protecting nonpurchasing residents against economic displacement, does not exempt conversions of mobilehome parks to resident ownership from the requirements of the Coastal Act [citation] or the Mello Act [citations], which also apply to such conversions, and *has no effect on the authority those acts delegate to local entities to enforce compliance with their provisions. Local agencies therefore are not precluded from establishing such procedures and holding such hearings as are appropriate to fulfill their responsibilities to ensure compliance with the Coastal Act and the Mello Act.*" (*Pacific Palisades*, *supra*, 55 Cal.4th at pp. 810-811, italics added.)

B. *Analysis*

*Pacific Palisades* largely disposes of Dunex's arguments with respect to the city's finding that its application is inconsistent with its LCP. *Pacific Palisades* makes it clear that because a large portion of Dunex's mobilehome park is in the coastal zone, Dunex

12

was required to obtain a coastal development permit. (See *Pacific Palisades*, *supra*, 55 Cal.4th at p. 810.) *Pacific Palisades* further instructs that central to the city's delegated authority under the Coastal Act is not only adoption of an LCP but enforcement of the policies set forth in its LCP when considering coastal development permit applications. (See *id.* at pp. 794, 810.)

In this regard, we note that like the trial court, Dunex relies upon the holding in *Hines v. California Coastal Com.* (2010) 186 Cal.App.4th 830, 845 (*Hines*) for the proposition that policies set forth in an LCP do not have the force of law. Dunex misapprehends the holding of *Hines*. In *Hines*, a local government granted a coastal development permit which permitted construction of a home within 100 feet of a riparian area, notwithstanding the fact that the governing LCP recommended there be a 100-foot setback from all riparian areas. However, the LCP also expressly permitted exceptions from the recommended setback under specified conditions, which the local governing body found existed. In this context, the court in *Hines* found that the *recommended* setback in the LCP did not have the force of law, that the local governing body had discretion to make an exception to it, and that it did not abuse its discretion in doing so. Nothing in *Hines* suggests that a local governing body may ignore the policies set forth in an LCP. Rather, *Hines* merely stands for the proposition that an LCP may provide a local government with discretion in applying its policies and provisions.

*Hines* is entirely consistent with the holding in *Pacific Palisades* that a local government is obligated, as a matter of *state law*, to consider the provisions of its LCP

13

when an applicant, such as Dunex, is seeking a coastal development permit.  (See *Pacific Palisades*, *supra*, 55 Cal.4th at pp. 810-811.)  In this regard, the Supreme Court's description of the role of local governments under the Coastal Act bears repetition: "'[U]nder the Coastal Act's legislative scheme, . . . the [LCP] and the development permits issued by local agencies pursuant to the Coastal Act are not solely a matter of local law, but embody state policy.'  [Citation.]"  (*Pacific Palisades*, at p. 794.)

The remaining question then is whether the city abused its discretion in finding that subdivision of Dunex's mobilehome park was inconsistent with the city's LCP, which expressly states that new development shall:  "Minimize risks to life and property in areas of high geologic, flood, and fire hazard."  Dunex contends that because it was only proposing a change in ownership and not any additional lots or any physical change to the current configuration of the park, it was not proposing any additional risk to life or property.  We disagree.

As the Supreme Court's opinion in *Pacific Palisades* makes clear, even if the conversion of a mobilehome park to individual ownership does not involve any immediate physical change, such a change in ownership may create circumstances warranting regulation under the Coastal Act or an adopted LCP.  (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 797.)  Here, the city could reasonably conclude that individual ownership would be an unacceptable increase in the risk to life and property because it would move the flood risk to individuals far less able to either respond to or bear that risk

14

than a single owner.[3]

Because the city did not abuse its discretion in finding inconsistency with its LCP, the city lawfully denied Dunex's application for the requisite coastal development permit and, as a consequence, the city's denial of Dunex's application for a subdivision map was also lawful.[4]  (See *Pacific Palisades*, *supra*, 55 Cal.4th at pp. 794, 810-811.) Accordingly, the trial court erred in issuing a writ of administrative mandate.

## DISPOSITION

The trial court's order issuing a writ of administrative mandamus is reversed, and the trial court is directed to enter an order denying Dunex's petition.  The city to recover its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

---

[3]     We deny Dunex's request that we take judicial notice of and augment the record with correspondence Dunex obtained from the city after the trial court issued its writ and the city's recently adopted housing element.  The correspondence, which indicates that the city generally does not require physical changes to mobilehome parks that are situated in flood zones, and the newly-adopted housing element, were not considered by the trial court, and the city had no opportunity to respond to their relevance, if any.  (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

[4]     Because Dunex's petition must be denied and no further proceedings on its petition will take place on remand, we need not and do not reach the city's additional contentions with respect to whether Dunex's conversion was bona fide and whether the city adequately notified Dunex of the need to provide Mello Act information.

15