Filed 11/18/22  Kabrins v. Novella CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HOWDY S. KABRINS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DIEGO DOUGHERTY NOVELLA, <br><br> Defendant and Respondent. | B308446 <br><br> (Los Angeles County Super. Ct. No. BC670095) |

APPEAL from an order of the Superior Court of Los Angeles County.  Mark A. Young, Judge.  Affirmed.

Murphy Rosen, Paul D. Murphy, Daniel N. Csillag; Covington & Burling, Daniel N. Shallman for Plaintiff and Appellant Howdy S. Kabrins.

Tisdale & Nicholson, Michael D. Stein for Plaintiff and Appellant Doris Weitz.

Holland & Knight, Kristina S. Azlin and Samuel J. Stone for Defendant and Respondent.

_____

In 2015, Diego Novella, a resident of Guatemala, murdered his girlfriend, Gabriella Kabrins Alban, who grew up in Southern California but sometimes lived in Guatemala, while the two were travelling in South Africa to seek treatment for Alban's Lyme disease. Novella was convicted of the murder and sentenced to 20 years in a South Africa prison. Alban's parents, Howdy S. Kabrins and Doris Weitz, both California residents, sued Novella for wrongful death. The trial court granted Novella's motion to quash service of summons on the ground that it lacked jurisdiction. We affirm that order.

## BACKGROUND

Alban was born in Los Angeles and resided in California for most of her life. Novella also resided in California for several years but was most recently a resident of Guatemala. In 2013, Alban began dating Novella, and the following year moved to Guatemala to live with him.

Alban suffered from Lyme disease, originally misdiagnosed as Addison's disease, which caused her constant physical and emotional pain. In December 2014, she returned from Guatemala to California, where she was largely bedridden.

In March 2015, Alban discovered a clinic in Germany that might be able to treat her Lyme disease, and scheduled a trip to the clinic for late May 2015.

Meanwhile, Novella had traveled from Guatemala to South Africa to obtain medical treatment for "prior psychological trauma" from Rhoda Slabbert-Barron, who offered a "purification program" consisting of colon cleansing, sauna purification and "sacred plant medicine" involving cannabis oil and ibogaine, a dangerous hallucinogen.

Before and after undergoing this treatment, Novella communicated with Alban in Los Angeles through telephone calls, emails, and text messages, touting the ibogaine treatment and suggesting that Alban undergo it to treat her Lyme disease. She was eager to do so, telling him in an email: "I'm desperate to regain my health completely and would do anything. So please keep me posted and I am glad you are the guinea pig – despite the fact that if I was more courageous like you . . . I would hop on a plane on my bday and go do it at the same time. But of course – aside from that being unrealistic, wishful thinking and just day-dreaming for me – as I wouldn't want to impose myself on your journey. I hope you get all the answers you are seeking and if this medicine ends up curing me too – in the near future – I would be eternally grateful."

At his criminal trial, Novella testified, "Gabriella said to me take the medicine. You try it first and according to how it goes with you, then I'm going to take it myself as well." "I spoke to her on the 21st of May. I told her that it went very well with the medicine. . . . I told her to come, that it has been a fantastic experience."

Although Novella insisted that Alban come to South Africa for the ibogaine treatment and said it had gone well, in fact the treatment entirely failed him, and Slabbert-Barron refused to treat him further. He never informed Alban of these facts. On May 22, 2015, he emailed, "I LOVE YOUUUUU[] BEBE!!!" And on May 28, he wrote: "Hi Gabs, these people will be around in June so you can come and take your medicine."

On June 21, 2015, Alban flew from Los Angeles for Guatemala to leave her two dogs with a caretaker before going to South Africa. After a delay in Guatemala for health reasons, she

3

arrived in South Africa on July 10, 2015. Novella murdered her shortly thereafter.

On July 26, 2017, Kabrins and Weitz filed a wrongful death complaint against Novella in Los Angeles Superior Court, personally serving him with the complaint in his South African jail cell.

Novella moved to quash service of process on jurisdictional grounds, and on January 19, 2018, appellants served him with jurisdictional discovery requests. Novella moved to quash this discovery. The trial court largely denied the motion but ordered that Novella need not respond to form interrogatory number 17.1, which propounded requests for admission. Novella responded to the jurisdictional discovery on December 17, 2019.

In September 2020, after almost two years of delays, the trial court held a hearing on Novella's motion to quash. The court found that although Novella induced Alban to seek ibogaine treatment in South Africa, appellants failed to show this contact with the forum related to their claim for wrongful death because insufficient evidence showed that Novella invited Alban to South Africa with the intention of killing her or committing any other tort. The court also found that the exercise of personal jurisdiction over Novella would be unjust because he was a resident of Guatemala, had only minimal contacts with California, and was incarcerated in South Africa. Therefore, the court granted Novella's motion to quash.

This appeal followed.

## DISCUSSION

The sole issue is whether the trial court acquired personal jurisdiction over Novella.

4

### A. General Principles of Jurisdiction

California courts may exercise jurisdiction over nonresidents "on any basis consistent with the Constitution of California and the United States." (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061; Code Civ. Proc., § 410.10 [long-arm statute].) These constitutions permit the exercise of jurisdiction over a nonresident defendant "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).) "[E]ach individual has a liberty interest in not being subject to the judgments of a forum with which he or she has established no meaningful minimum 'contacts, ties or relations.' [Citations.] As a matter of fairness, a defendant should not be 'haled into a jurisdiction solely as the result of "random," "fortuitous," or "attenuated" contacts.' " (*Id*. at p. 445.) Nor is the minimum contacts test satisfied by "[t]he unilateral activity of those who claim some relationship with a nonresident defendant . . . ." (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 474.)

"Personal jurisdiction may be either general or specific." (*Vons*, *supra*, 14 Cal.4th at p. 445.) Because appellants do not claim general jurisdiction, we consider only whether specific jurisdiction exists here. A nonresident defendant "may be subject to the *specific* jurisdiction of the forum[] if the defendant has purposefully availed himself or herself of forum benefits [citation] . . . the 'controversy is related to or "arises out of" a defendant's contacts with the forum,' " and the assertions of personal jurisdiction would comport with fair play and substantial justice. (*Id*. at p. 446.)

5

"When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction." (*Vons*, *supra*, 14 Cal.4th at p. 449.) A plaintiff must meet this burden with competent evidence of jurisdictional facts. (*Nobel Farms, Inc. v. Pasero* (2003) 106 Cal.App.4th 654, 657-658.) The evidence need not be conclusive, nor need the plaintiff prove the elements of the asserted causes of action. But the plaintiff must provide some evidence allowing the trial court to conclude that the defendant's contacts with California relate to the causes of action. Allegations in an unverified complaint and vague declarations of ultimate facts do not suffice to establish the facts of jurisdiction; a plaintiff must provide declarations and authenticated documents that permit the court to form an independent conclusion. (*Ibid.*)

" ' " 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs its activities toward the forum so that it should expect, by virtue of the benefit it receives, to be subject to the court's jurisdiction based on' its contacts with the forum." [Citation.] Thus, purposeful availment occurs where a nonresident defendant " 'purposefully directs' its activities at residents of the forum, purposefully derives benefits from its activities in the forum" [citation], "creates a 'substantial connection' with the forum" [citation], " 'deliberately' has engaged in significant activities within" the forum [citation], or "has created 'continuing obligations' between itself and residents of the forum." ' " (*Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd*. (2019) 31 Cal.App.5th 543, 554 (*Jayone*).)

6

Even if a defendant purposefully directs his activities toward the forum, specific jurisdiction exists only if the lawsuit arises out of or relates to the defendant's contacts with the forum. (*Bristol-Myers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1780.)  This requirement is satisfied " 'if there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.'  [Citations.]  'A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction.  Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific personal jurisdiction is appropriate.' "  "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." (*Jayone, supra*, 31 Cal.App.5th at pp. 559-560; see also *In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 116 ["If the operative facts of the allegations of the complaint do not relate to the [defendant's] contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific personal jurisdiction"].)

Once a plaintiff has demonstrated facts establishing minimum contacts with the forum state, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. (*Vons, supra*, 14 Cal.4th at p. 449.)

We independently review a trial court's legal conclusions concerning jurisdiction. (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 393.)  We review its express and implied factual determinations for substantial evidence. (*Ibid.*)

7

## B. Application

Here, Alban lived in Los Angeles from March to June 2014, during which time Novella purposefully directed electronic communications to her to induce her to travel to South Africa for an ibogaine treatment for her Lyme disease. Assuming for the sake of argument that in so doing, Novella purposely availed himself of forum benefits, no evidence suggests appellants' wrongful death claims arose from or were related to these contacts.

The elements of a cause of action for wrongful death are a wrongful act, the resulting death, and damages. (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 31.) Appellants failed to establish that Novella's murder of Alban in South Africa arose from or was related to Novella's contacts with California. For example, no evidence suggested that Novella urged Alban to travel to South Africa with the intention of killing her or committing any other tort related to California.

Appellants argue that Novella induced Alban to travel to South Africa under false pretenses, knowing the ibogaine treatment was ineffective because it had not worked for his conditions. As to the claim of false pretenses, as the trial court found, no evidence suggests Novella knew the proposed treatment would be ineffective *for Alban*. The only evidence was that he knew—and failed to inform Alban—that it had not worked for him. But even if one assumes Novella did cause Alban to travel to South Africa under false pretenses, that activity is far too attenuated from the tort at issue. Just because a relationship need not rise to the level of causation to support jurisdiction "does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits,

as it must to adequately protect defendants foreign to a forum." (*Ford Motor Co. v. Montana Eighth Judicial Dist. Court* (2021) \_\_\_U.S.\_\_\_ [141 S.Ct. 1017, 1026, 209 L.Ed.2d 225, 236].) Appellants' theory would impose no real limits on specific jurisdiction.  Although we agree that Alban would not have been in South Africa but for Novella's invitation, that was only one of myriad but-for factors that lined up to put her in South Africa.  A single but-for circumstance does not itself establish a substantial connection between Novella's California contacts and Alban's death.  If it did, any invitation to a California resident to travel internationally, or any other activity directed at the resident which enabled her to reach a foreign country—for example the sale of a ticket or housing of a pet—would be a basis for jurisdiction over any tort occurring thereafter.

Appellants argue the trial court made several evidentiary errors and held them to an improper evidentiary standard.  We need not reach these issues because even considering all of appellants' evidence, no basis exists to exert jurisdiction over Novella simply because he invited Alban to South Africa.  Neither need we decide whether Novella successfully demonstrated that exercise of jurisdiction would be unreasonable, nor whether the wrongful death statute applies when the death occurred in another country.

Because appellants were unable to show any evidence of an act furthering Novella's intention to kill Alban—neither an act occurring in this state nor one that occurred outside the state that was directed toward California—California cannot assert jurisdiction over Novella consistent with federal due process and California's long-arm statute.

9

## DISPOSITION

The trial court's order granting respondent's motion to quash service is affirmed. Respondent is to recover his costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10